**AMOCO PRODUCTION COMPANY, BP Amoco, Mobil Producing Texas and New Mexico, Inc., and Exxon Mobil Corporation, Appellants,**

v.

**Edmund R. WOOD, Appellee.**

No. 06–02–00081–CV.

Court of Appeals of Texas, Texarkana.

Submitted May 14, 2003.

Decided June 24, 2003.

Rehearing Overruled July 15, 2003.

Order Granting Rehearing Aug. 7, 2003.

Thomas A. Zabel, Burns, Wooley, Marseglia & Zabel, LLP, Houston, for Appellants.

Dean Searle, for Edmund R. Wood.

Dean Searle, Attorney At Law, Marshall, for Appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Amoco Production Company, BP Amoco, Mobil Producing Texas and New Mexico, Inc., and Exxon Mobil Corporation (collectively Amoco & Exxon Mobil) appeal the trial court's denial of their motions for

summary judgment and the granting of summary judgment in favor of Edmund R. Wood. Another party to the suit, Vernon E. Faulconer, Inc., settled its case with Wood during the pendency of this appeal.

Amoco and Exxon Mobil raise two points of error in their combined brief: (1) the trial court erred by overruling Amoco's and Exxon Mobil's objections to Wood's summary judgment evidence and by granting Wood's motion for summary judgment, and (2) the trial court erred by denying Amoco's and Exxon Mobil's motions for summary judgment. Because we decide the trial court erred by granting Wood's motion for summary judgment, and that Amoco and Exxon Mobil were entitled to judgment as a matter of law, we need not address whether the trial court erred by denying Amoco's and Exxon Mobil's objections to Wood's summary judgment evidence.

In 1954, members of the Key family [1] (collectively "the Keys") owned mineral interests in Harrison County, Texas. The Keys combined their mineral interests and contributed these to La Gloria Company and Stanolind Oil and Gas Company to create much of a 640–acre tract called the Neal C. Richardson unit for the production of natural gas. La Gloria was the unit's initial designated operator, with Stanolind having the option to become the operator in 1957.

The Richardson well was completed as a gas well in 1954 or 1955. At the time of its creation, the Richardson unit also covered 23.145 mineral acres owned by John Dewese (Dewese interest). The Richard-son well was not drilled on the Dewese interest. Dewese himself never contributed his mineral interests to the Richardson unit. Amoco and Exxon Mobil succeeded La Gloria and Stanolind [2] as operators of the Richardson well. In 1988, Vernon E. Faulconer, Inc., of Tyler, Texas, succeeded Amoco and Exxon Mobil. Faulconer has operated the Richardson unit since that time.

The Richardson unit's operating agreement provides that, if a person owned uncommitted mineral interests that were included in the production unit, then La Gloria and Stanolind would maintain a "carried interest account" (CIA) for any such uncommitted mineral interests owners. From the CIA, La Gloria and Stanolind would each pay one half the well's production costs attributable to that uncommitted interests' percentage share of the production costs. La Gloria and Stanolind would also pay to the previously uncommitted mineral interests' owner the proceeds of the CIA for his or her interests. If there was a surplus (profit) in the CIA at the time the operating agreement terminated, and the uncommitted mineral interests owner had not joined the unit, the operating agreement allowed La Gloria and Stanolind to keep those proceeds in the CIA owing to any uncommitted mineral interests owner. The Richardson well maintained continuous production since the time of drilling. Therefore, under the terms of the operating agreement, neither La Gloria nor Stanolind were ever entitled to acquire the balance of the CIA attributable to the uncommitted Dewese interest.

1. Edmund Key, III, P.W. and Constance Key Wood, R.O. and Rae Key Dulaney, John P. and Nancy Key Burton, William B., Jr., and Mary Key Henley, Mrs. Rae Key (a widow), Dolly Bell Key ("a feme sole"), Constance Key Wandel ("a feme sole"), C. M., Jr., and Mary Wandel Thompson, and John Philip Wandel.

2. Stanolind was created in 1931 as the exploration and production business of Amoco. Stanolind was eventually dissolved during corporate restructuring.

On August 25, 1999, the County Court at Law of Harrison County, Texas, appointed Martha Dieste, the County Clerk of Harrison County, as the receiver for the Dewese interest. On August 17, 1999, Dieste, in her capacity as receiver, leased the Dewese interest to Edmund R. Wood.[3] The lease explicitly included the authority to pool or unitize the land with any existing units. Wood signed and filed a "Ratification of Declaration of Unitization" on October 7, 1999. The ratification claimed to be effective retroactively, to March 9, 1954, the date the declaration of unitization was recorded in the Harrison County deed records.

On September 18 of the following year, the 71st Judicial District Court entered an order nunc pro tunc appointing Dieste and her successors (namely Patsy Cox, County Clerk of Harrison County), as the receiver of the Dewese interest.[4] Three days later, the receiver executed a new lease of the Dewese interest to Wood. The new lease stated:

> This lease is to be effective from the date of first production on the Neal C. Richardson Unity [sic], which was on or about the 1st day of March, 1955, being the date of that certain operating agreement for the Neal C. Richardson Gas Unit, Blocker Field, Harrison County, Texas.
>
> This lease is given to correct and amend that certain oil, gas and mineral lease dated August 17th, 1999, from Martha Dieste, County Clerk of Harrison County, Texas, acting in her capacity as receiver for Mineral Interests, under appointment by the 71st Judicial District Court in Cause No. 98–0214, for John A.

Deweese [sic], his heirs, known or unknown, if he is deceased, to Edmund R. Wood, recorded in Volume 2001, Page 4 of the Official Public Records of Harrison County, Texas, in order to provide that the effective date of this lease be as of the date of first production.

Believing the 1999 and 2000 leases entitled him to the Dewese interest's past production proceeds, Wood demanded payment from Faulconer for the balance of the uncommitted Dewese interest CIA and all future royalties attributable to those mineral interests. When Faulconer did not acquiesce to Wood's demand, Wood sued Faulconer for breach of contract and declaratory judgment. Faulconer in turn filed a third-party petition joining Amoco and Exxon Mobil, asserting Amoco and Exxon Mobil were the successors to La Gloria and Stanolind's leasehold for working interests in the Richardson unit until August 1988. Faulconer sought indemnity for any sums it might be required to pay Wood as a result of Wood's claims for the period prior to Faulconer's assuming operation of the Richardson unit.

Wood filed a motion for partial summary judgment; Amoco, Exxon Mobil, and Faulconer filed cross-motions for summary judgment. After the summary judgment hearing and several supplemental letters from all parties, the trial court overruled Amoco's, Exxon Mobil's, and Faulconer's motions for summary judgment, and granted Wood's motion for partial summary judgment. The trial court ordered Amoco, Exxon Mobil, and Faulconer "to make payment of the amounts held, or required to be held, in their 'Carried Inter-

**3.** Edmund R. Wood is the son of Constance Key Wood, one of the original Key family members who contributed her mineral rights to create the Richardson Unit. Wood inherited his mother's mineral estate on her death in 1983. At the time of his inheritance, Amoco and Exxon Mobil were no longer operating the Richardson unit.

**4.** The propriety of the nunc pro tunc order is not at issue before us in this appeal.

est Accounts' for the John Deweese [sic] uncommitted interest to Plaintiff Edmund R. Wood pursuant to the unrecorded Operating Agreement." The trial court also awarded pre- and post-judgment interest, and attorneys' fees.

The parties stipulated that the proceeds attributable to the Dewese uncommitted interest totalled $171,695.03 for the period 1957 through July 1988, and $45,832.55 for the period August 1988 through January 2001.[5] A pre- and post-judgment interest rate of ten percent was agreed to by the parties. The parties also stipulated Wood's reasonable attorney's fees at trial were $35,000.00 and for each level of unsuccessful appeal by Amoco, Exxon Mobil, and Faulconer are $10,000.00.[6]

Amoco and Exxon Mobil contend the trial court erred by denying their motions for summary judgment and by granting Wood's motion for summary judgment. The key issue in resolving the dispute between the parties is whether Wood is entitled to claim the balance of the Dewese interest CIA.

Summary judgment is proper when the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 379 (Tex.App.-Texarkana 1989, no writ). The question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the plaintiff's cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex.1990). Because the movant bears the burden of proof, all evidence favorable to the nonmovant is taken as true, and all doubts as to the genuine issue of material fact are resolved in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

When both parties move for summary judgment and the trial court grants one and denies the other, the reviewing court shall review the summary judgment evidence presented by both sides and determine all questions presented. *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

Article 64.091 of the Texas Civil Practice and Remedies Code, the statute allowing a trial court to appoint a receiver for mineral interests, does not authorize the receiver to convey any rights to personal property. Tex. Civ. Prac. & Rem.Code Ann. § 64.091 (Vernon 1997). Royalties become personal property once the mineral estate is severed from the real estate at the well head. *Humble Oil & Ref. Co. v. West*, 508 S.W.2d 812, 817 (Tex.1974); *Rogers v. Ricane Enters., Inc.*, 930 S.W.2d 157, 165 (Tex.App.-Amarillo 1996, no writ). A party to a mineral development lease is only entitled to mineral royalties accruing after the date the owner ratified the lease in question by either filing suit or by ful-

---

**5.** Without waiving their rights to contest liability on appeal, Amoco, Exxon Mobil, and Faulconer each stipulated their obligations for damages would be $85,847.52, $85,847.51, and $45,832.55, respectively.

**6.** Pending appeal but before submission of the case, Faulconer settled its appeal against Wood. We severed Faulconer's appeal against Wood, assigned it cause number 06–03–00080–CV, and remanded the case for entry of orders to effectuate the settlement agreement. *Vernon E. Faulconer, Inc. v. Wood*, No. 06–03–00080–CV, 2003 WL 21327875 (Tex. App.-Texarkana June 10, 2003) (memorandum opinion).

filling the terms of the operating agreement. *See Montgomery v. Rittersbacher*, 424 S.W.2d 210, 214–15 (Tex.1968) (mineral owner not entitled to preratification royalties).

■ Further, the receiver's lease in this case purports to be retroactive to March 1, 1955, the date of first production. Nevertheless, the earliest date Wood could have ratified the mineral development lease and contributed the Dewese interest was August 17, 1999, the filing date of the first lease Wood obtained from the receiver. Accordingly, the statutes and caselaw do not authorize recovery under Wood's claim given the facts of this case. The trial court erred by granting Wood's motion for summary judgment and awarding royalties in the Dewese CIA back to 1954. Wood was not entitled to retroactive proceeds as a matter of law.

In their second point of error, Amoco and Exxon Mobil contend the trial court erred by denying their motions for summary judgment.

■ The parties assume Amoco and Exxon Mobil continue to maintain a CIA for the post-production proceeds attributable to the Dewese interest before 1988, even though both Amoco and Exxon Mobil sold their interests in the Richardson unit almost fifteen years ago. Wood sued Amoco and Exxon Mobil for royalties attributable to production proceeds for the Dewese interest CIA from 1955 through 1988. However, Wood did not acquire a receivership lease until 1999 for the Dewese interest. A receiver's mineral lease may only convey the rights to proceeds from future production; it may not convey personal property such as royalties for past production. *Cf. Superior Oil Co. v. Roberts*, 398 S.W.2d 276, 278 (Tex.1966) (fact that operator retained more than its proper share in division of mineral proceeds is matter for royalty owners; it cannot authorize a claim for retroactive ratification of lease agreement). Since, as a matter of law, Wood has no right to recover royalties accruing before obtainment of the receiver's lease, and because this is Wood's only theory of recovery against Amoco or Exxon Mobil, the trial court erred by denying Amoco's and Exxon Mobil's motions for summary judgment.

At oral argument, the parties agreed the trial court rendered a final judgment disposing of all Wood's claims against Amoco and Exxon Mobil. Because we find the trial court erred by granting Wood's motion for summary judgment and by denying Amoco's and Exxon Mobil's motions for summary judgment, we reverse the summary judgment granted in favor of Wood and render judgment that Wood take nothing from Amoco and Exxon Mobil.

## OPINION ON REHEARING

■ Amoco and Exxon Mobil filed a motion for rehearing contending this Court should also remand this case for determining whether the trial court should award Amoco and Exxon Mobil their attorney's fees. A trial court may award costs and reasonable and necessary attorney's fees in a declaratory judgment action to the extent that the trial court, in its discretion, determines such an award is equitable and just. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997); *Utley v. Marathon Oil Co.*, 31 S.W.3d 274 (Tex.App.-Waco 2000, no pet.). Wood opposes any award of attorney's fees on the ground that Amoco and Exxon Mobil failed to specifically request such relief in their motion for summary judgment or in their amended motion for partial summary judgment.

In the trial court, Amoco and Exxon Mobil's third-party defendants' original answer contained a request for attorney's fees should the companies prevail. Amoco

and Exxon Mobil's answer to Wood's amended original petition for declaratory judgment also contained a counterclaim against Wood for attorney's fees. The companies' motion for summary judgment, however, did not specifically request an award of attorney's fees in conjunction with an award of summary judgment. Nor did the companies' amended motion for partial summary judgment specifically request the award of attorney's fees.

The trial court's notice of the hearing on the motions for summary judgment did not include the notice that it would consider the issue of attorney's fees. The record before us suggests that, when the trial court considered the parties' competing motions for summary judgment, the court had before it no evidence regarding the attorney's fees from either side. What constitutes reasonable attorney's fees is a question of fact. *Merch. Ctr., Inc. v. WNS, Inc.*, 85 S.W.3d 389, 397 (Tex.App.-Texarkana 2002, no pet.). Thus, even assuming the trial court had properly awarded summary judgment in favor of Amoco and Exxon Mobil, the court was not in a position, at that juncture of the proceedings, to award attorney's fees, if any, that it found to be "equitable and just." An additional hearing, complete with advance notice and the receipt of evidence, would have been required as a matter of course.

Given the procedural posture of the trial court at the time it considered the competing motions for summary judgment, and understanding that we have rendered judgment in favor of Amoco and Exxon Mobil, we grant Amoco and Exxon Mobil's motion for rehearing and remand this case to the trial court for the sole purpose of resolving Amoco and Exxon Mobil's claim for attorney's fees.