

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00442-CV

FRANCES JANE FULLER
JACKSON MORRIS

APPELLANT

V.

MARGARET ANN FULLER

APPELLEE

----------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellee Margaret Ann Fuller (Fuller) sued her sister Appellant Frances Jane Fuller Jackson Morris (Morris) for tortious interference with contract. Morris countersued for breach of fiduciary duty and for an accounting for the income of the sisters' joint venture. Morris appeals from the trial court's take-nothing judgment on her breach of fiduciary duty claim and its judgment awarding an

---

[1]*See* Tex. R. App. P. 47.4.

accounting to determine the existing indebtedness of the joint venture. In four issues, Morris argues that the case should have been transferred under a mandatory venue provision; that the assignment by which the trial court found she had assigned her interest in the joint venture to her sister was forged; that the trial court's judgment incorrectly calculated her interest under the assignment and should have ordered that her interest became effective on September 11, 2009; and that the trial court's judgment is vague and unenforceable and improperly awarded Fuller relief not requested in her pleadings. Because we hold that the mandatory venue provision did not apply and that the trial court's judgment was not erroneous, we affirm.

Robert P. Fuller owned interests in oil, gas, and mineral properties in Hemphill County, Texas, and in 1972, he conveyed some of these interests to a joint venture to be owned equally by his two daughters, Morris and Fuller. The joint venture was originally called the Cope-Jackson Joint Venture (at the time, Morris was married to Leete Jackson III, and Fuller was married to John Cope).

In 1984, after Fuller had divorced Cope and remarried, the sisters formed a new joint venture, the Lydick-Jackson Joint Venture (reflecting Fuller's new last name).[2] Their father and their brother, Rex Fuller, were appointed as agents to manage the joint venture.

---

[2]Fuller also at some point went by the name Ann Fuller Clayton.

Robert P. Fuller died in 1988, and in 1989, the sisters terminated Rex as the joint venture's agent and hired Gruy Petroleum Management to manage their interests. A Gruy report dated February 9, 1989, reflected the joint venture's outstanding loans, including $2.6 million owed to First National Bank of Lubbock, $4.5 million owed to Continental Illinois National Bank, and $7.5 million owed to two other banks. The report noted that no payments were being made on the note to Continental and that FDIC intervention was "probable." The report then noted that "[a]lmost all properties are mortgaged to the lending institutions," that "[i]t will be necessary to continue receiving revenue from the properties pledged to [Continental] for the [joint venture] to pay interest payments, lease operating expenses, and receive any revenue," and that if the FDIC intervened, "additional monies will be required to service interest on the loan."

In February 1992, the FDIC (as successor in interest to Continental) obtained a judgment of $4,500,096.50 against Morris, Fuller, and Rex (individually and as executor of their father's estate), jointly and severally, and perfected liens against their oil and gas interests. In May 1992, First National Bank of Lubbock notified the three siblings that each of them had failed to fulfill provisions of a 1990 settlement agreement they had made with the bank. Among other things, Morris had agreed to assign to Rex her interest in the joint venture but had not done so. The letter states that "[u]nless the above is completed the bank will determine the contract breached and continue to hold [Morris] responsible for the original indebtedness."

3

Fuller testified at trial that because of the FDIC judgment, Morris wanted to assign her interest in the joint venture to Fuller. On May 8, 1992, an assignment of Morris's interest in the joint venture, dated May 7, 1992, (the assignment) was filed in Lubbock, Texas, by family friend John Walker. The assignment states that "[Morris] . . . does hereby transfer and assign unto [Fuller] all of [Morris's] rights, title, and interest" in the joint venture, effective as of January 1, 1991. The assignment also states that "[a]fter payout of all indebtedness of [the joint venture] and that specific note of [Fuller] at First National Bank in Lubbock, Texas, [Morris] whall [sic] be entitled to a 40% net profit interest in the properties conveyed in this assignment." Because of the assignment, First National Bank released Morris from her obligation for the debt owed by Fuller, Morris, and Rex.

In 1995, Fuller and Rex negotiated an agreement with the FDIC under which the FDIC forgave a large portion of the outstanding judgment. The debt forgiveness caused Fuller to incur tax liability of over $2.5 million. The IRS did not attempt to collect from Morris any taxes owed by the joint venture interests for the years after the assignment.

In 2006, Fuller sued Morris and Devon Louisiana Corporation in Tarrant County, asserting a claim for breach of contract against Devon and a claim for tortious interference with contract against Morris. She alleged that their father had conveyed mineral interests to them "in the nature of a joint venture"; that Devon was contractually obligated to pay royalties from oil and gas production on the subject properties; that Morris had assigned to Fuller her interest in the joint

4

venture; that in June 2005, Morris had contacted Devon and claimed that she had not executed the assignment and that she was entitled to royalties; and that as a result, Devon stopped making payments to Fuller. Fuller alleged that venue was proper in Tarrant County because the contract payments were sent to Tarrant County and Fuller resided in Tarrant County. Fuller subsequently dismissed her claims against Devon.

Morris filed a motion to transfer venue to Hemphill County on the ground that Fuller's suit involved title to real property located in Hemphill. The trial court denied the motion. Morris also countersued Fuller for breach of fiduciary duty and for an accounting.

At the bench trial, Morris testified that she did not sign the assignment. John Weldon, a forensic document examiner, testified that in his opinion, the signature on the assignment was Morris's genuine signature. Fuller testified that Morris had personally given her a copy of the assignment and that she, Morris, and Morris's husband went together to take the assignment to First National Bank.

After the trial, the trial court made the following findings of fact:

- Morrios had assigned her interest in the joint venture to Fuller in order to avoid liability under the FDIC judgment and "possible IRS issues looming."

- In 1995, Fuller and Rex reached an agreement with the FDIC in which the FDIC agreed to forgive a large part of the judgment owed. This forgiven

5

debt was reported to the IRS, increasing Fuller's personal tax liability to over $2.5 million.

- Because of the assignment, the IRS did not attempt to collect from Morris any of the tax debt owed by the joint venture for the years after the assignment.

- After the assignment, Morris never claimed any profit or loss from the joint venture interests on her personal income tax returns.

- Morris and Fuller were sued in 2005 for unpaid property taxes in Hemphill County. During Fuller's attempts to have the taxes paid through proceeds received from Devon, Morris intentionally made false representations and claims to some of the monies Devon held. Her claims forced Devon to suspend payments to Fuller, and Fuller consequently incurred late penalties on the taxes.

- Morris breached the terms of the assignment, but no evidence established the amount of damages incurred by Fuller as a result of this breach.

- Once all of the indebtedness of the joint venture is satisfied, Morris's reversionary interest in the net proceeds of the joint venture shall occur.

- Under the plain language of the assignment, Morris is not entitled to the benefit from the actions of Fuller and Rex in reducing the amount of the FDIC judgment.

The trial court signed a judgment incorporating its findings and conclusions and ordering that "the relationship between [Fuller] and [Morris] regarding their

6

respective rights to the [joint venture] shall and is hereby governed by the terms of [the assignment]." The judgment ordered that Fuller prepare an accounting setting forth the existing indebtedness of the joint venture. The trial court further ordered that after that indebtedness has been paid in full, Morris "shall receive twenty (20%) percent of the net profits of the [joint venture] thereafter (representing forty percent (40%) of the fifty percent (50%) interest assigned by [Morris] to [Fuller] in [the assignment])." The trial court also ordered that Morris take nothing on her breach of fiduciary duty counterclaim. Morris now appeals.

In her first issue, Morris argues that venue should be transferred to Hemphill County, Texas, where the mineral properties in question are located, because there is no probative evidence in the record to overcome the mandatory venue provision in Texas Civil Practice and Remedies Code section 15.011.[3] Section 15.011 applies to: (1) actions for recovery of real property or for recovery of an estate or interest in real property, (2) actions for partition of real property, (3) actions to remove encumbrances from the title to real property, (4) actions for recovery of damages to real property, and (5) actions to quiet title to real property.[4] Any of these specified types of actions must be brought in the county in which part or all of the property is located.[5] Morris argues that Fuller's suit was

---

[3]Tex. Civ. Prac. & Rem. Code Ann. § 15.011 (West 2002).

[4]*Id.*

[5]*Id.*

one to recover oil and gas royalties, a royalty interest is an interest in land, and therefore venue for Fuller's suit is mandatory in the county where the mineral interest is located.

The dominant purpose of a suit determines whether it falls within the mandatory venue provision.[6] To determine the nature of the suit, we look at the facts alleged in the plaintiff's petition, the rights asserted, and the relief sought.[7] Thus, for example, if the plaintiff's petition is for a partnership accounting and dissolution, or to construe a written trust agreement, section 15.011 does not apply, even though the partnership or trust may own real property.[8] If, however, ownership of the property is in dispute, the mandatory venue provision applies.[9]

Fuller sought to recover from Morris royalties that had accrued under the contract with Devon and that Morris had caused Devon to pay to her. Accrued royalties are interests in personal property.[10] Section 15.011 has no application to personal property.[11]

---

[6]*Scarth v. First Bank & Trust Co.*, 711 S.W.2d 140, 142 (Tex. App.—Amarillo 1986, no writ).

[7]*Id.*

[8]*See Shellberg v. Shellberg*, 428 S.W.2d 117, 121 (Tex. Civ. App.—Fort Worth 1968, writ dism'd); *Kirshenbaum v. Smith*, 480 S.W.2d 500, 503 (Tex. Civ. App.—El Paso 1972, no writ).

[9]*Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 371 (Tex. 2001).

[10]*Id.* (citing *Tex. Oil & Gas Corp. v. Moore*, 630 S.W.2d 450, 452–53 (Tex. App.—Corpus Christi 1982, writ dism'd) for the proposition that "claims for past and accrued royalties are properly characterized as claims to recover

Furthermore, under the language of section 15.011 and the Supreme Court's opinion in *Yzaguirre*, if the suit is not one to recover damages to real property and ownership of the property is not in dispute, section 15.011 does not apply.[12] Looking at the pleadings in their entirety,[13] Fuller did not dispute ownership of the royalty interests themselves or the extent of the royalty interest. Her claim was that Morris falsely denied making the assignment of her *joint venture interest*, not that the sisters disputed with whom Devon had executed the lease or who owned the mineral interests. Thus, it was the parties' rights and interests in the joint venture on which Fuller based her claim. Fuller had to prove

---

personalty"); *Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*, 03-04-00600-CV, 2005 WL 1583506, at *3 (Tex. App.—Austin July 7, 2005, no pet.) (mem. op.); *see also Amoco Prod. Co. v. Wood*, 113 S.W.3d 462, 466 (Tex. App.—Texarkana 2003, no pet.) ("Royalties become personal property once the mineral estate is severed from the real estate at the well head.").

[11] *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.011.

[12] *Yzaguirre*, 53 S.W.3d at 371 (stating that "[a]lthough oil and gas leases are an interest in real property, the applicable version of section 15.011 [in effect at that time] applied only when ownership of the property was in dispute" and noting that the legislature had since amended the section to include actions for recovery of damages to real property).

[13] *See Scarth*, 711 S.W.2d at 142 (noting that we consider the plaintiff's petition, the rights asserted, and the relief sought); *see also KJ Eastwood Invs., Inc. v. Enlow*, 923 S.W.2d 255, 258 (Tex. App.—Fort Worth 1996, no writ) (determining the primary purpose of the plaintiff's suit from reading the entire petition and concluding that the suit concerned an interest in property only secondarily).

the existence of the mineral lease with Devon in order to prove her claim.[14] But that does not make section 15.011 applicable because establishing ownership of property or an interest in property was not the dominant purpose of Fuller's suit.[15] Fuller was not using the tortious interference claim "as an indirect means of quieting title to the mineral estate" in the property.[16] We overrule Morris's first issue.

In Morris's second issue, she argues that the assignment through which Fuller claims title to the minerals is invalid because it was forged when Fuller recorded it in Lubbock County on May 8, 1992, and forged again by a different person four years later when Fuller recorded it in Hemphill County on May 10, 1996. In her briefing on this issue, Morris merely discusses the evidence that she contends would support a finding that she did not execute the assignment.

[14]*See All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 531 (Tex. App.—Fort Worth 2009, pet. denied) (noting that the existence of a contract subject to interference is an element of a claim for tortious interference with contract).

[15]*See Yzaguirre*, 53 S.W.3d at 371 (holding that section 15.011 did not apply to the dispute over the obligations owed to royalty owners under the terms of mineral leases because ownership of the royalty interests was not in dispute).

[16]*Cf. In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 119 (Tex. 2006) (holding that section 15.011 applied because the plaintiff was using a declaratory judgment action "as an indirect means of quieting title to the mineral estate" in the land at issue); *see also Renwar Oil Corp. v. Lancaster*, 154 Tex. 311, 315, 276 S.W.2d 774, 776 (1955) ("Where the trial court, as between the parties, must either locate a survey on the ground (by either surveying data or estoppel or both) in order to determine a dispute as to the amount of royalty due, or must determine that one party is estoped to deny a certain location, the suit is essentially one for the recovery of land and to quiet title.").

Because Morris discusses evidence that she argues would support a finding that the assignment was forged, and because she states that "[t]here is no evidence that anyone saw [her] sign" the assignment, we construe her argument to be that the evidence was not legally sufficient to support the trial court's finding that the assignment was valid.

Because Morris cites no law in support of her issue and does not provide "clear and concise argument" to support her issue, we hold that this issue is waived as inadequately briefed.[17] In the interest of justice, however, we note that evidence supports the trial court's finding that the assignment was not forged. This evidence includes Fuller's testimony that Morris had asked her to accept an assignment and had given her a copy of the assignment and the testimony of a forensic document examiner who stated that in his opinion, the signature on the assignment was Morris's.[18] Accordingly, we overrule Morris's second issue.

Morris argues in her third issue that the trial court erred by interpreting the assignment and limiting her net profit interest to only twenty percent. We disagree. The assignment states that Morris "does hereby transfer and assign unto [Fuller] all of [Morris's] rights, title, and interest . . . in the Lydick-Jackson

---

[17]See Tex. R. App. P. 38.1(i) (requiring appellate briefs to contain appropriate citations to authorities); *Gray v. Nash*, 259 S.W.3d 286, 294 (Tex. App.—Fort Worth 2008, pet. denied) (noting that an argument may be waived if inadequately briefed).

[18]See *Webb v. Jorns*, 488 S.W.2d 407, 411 (Tex. 1972) ("It is an old and familiar rule that the fact finder may resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses.").

Joint Venture and the Cope-Jackson Venture."  The assignment further states that "[a]fter payout of all indebtness [sic] of [the] Lydick-Jackson Joint Venture and that specific note of [Fuller] at First National Bank in Lubbock, Texas, [Morris] whall [sic] be entitled to a 40% net profit interest in the properties conveyed in this assignment."  Morris also "expressly reserves the sum of $6,000 to herself to be repaid as expeditiously as possible."

The assignment plainly states that after the joint venture's indebtedness and Fuller's note to First National Bank were paid, Morris would be entitled to "a 40% net profit interest *in the properties conveyed in this assignment*."  [Emphasis added.]  The "properties conveyed in this assignment" were Morris's fifty percent interest in the joint venture.  Thus, under the language of the assignment, when the indebtedness had been paid, Morris would be entitled to forty percent of her former fifty percent interest in the joint venture, that is, twenty percent of the total interest in the joint venture.[19]  Morris cites to no authority in support of a different construction of the assignment language.[20]

Morris argues that the assignment gave her a reversionary interest in forty percent of all of the mineral interests owned by the joint venture.  But Morris's construction contradicts the language of the assignment, and Morris makes no

---

[19]*See Petro Pro, Ltd. v. Upland Res., Inc.*, 279 S.W.3d 743, 749–50 (Tex. App.—Amarillo 2007, pet. denied) (determining the nature and scope of an unambiguous assignment from its plain language).

[20]*See* Tex. R. App. P. 38.1(i).

12

argument for why the trial court erred by not disregarding the assignment's plain terms.[21]

In her reply brief, Morris argues, with no citation to authority, that this interpretation of the assignment is incorrect because if the assignment had conveyed Morris's entire fifty percent interest, "then the joint venture ceases to exist and the assignment is in essence a transfer of the entire interest from the [joint venture] to [Fuller]." The trial court agreed with Morris's assessment that the joint venture ceased to exist, concluding that upon Morris's assignment, the sisters "were no longer involved in what could legally be considered a joint venture, but instead were parties operating under the express terms of the" assignment. Morris offers no challenge to that conclusion on appeal and makes no explanation of why, if the assignment did terminate or alter the terms of the joint venture, the sisters were not legally allowed to do so, or why such an effect of the assignment would make the trial court's judgment erroneous. Accordingly, we overrule this part of Morris's third issue.[22]

Morris further argues that the trial court failed to find what, if anything, remains on the existing indebtedness of the joint venture, and, accordingly, the judgment should be modified so that Morris's reversionary interest commenced on September 11, 2009, the date of the judgment. She argues, with no citation

---

[21] *See id.*

[22] *See* Tex. R. App. P. 38.1(i), 44.1(a).

to authority,[23] that Fuller failed to prove what remains owed by the joint venture and that "it should now be too late, after the trial is over, for [Fuller] to be allowed to unilaterally determine the amount she claims to be owed and for [Morris] to be required to relitigate that issue."

The trial court determined that there was sufficient evidence to find that some indebtedness still existed at the time of trial and therefore Morris was not entitled to any proceeds from the joint venture interest, but it could not calculate the definite amount outstanding. A judgment may properly order the relief of an accounting, and a judgment ordering an accounting by an interested party is not in and of itself improper.[24] Morris makes no argument and cites no authority

---

[23] *See* Tex. R. App. P. 38.1(i).

[24] *See, e.g., Ferguson v. Ferguson*, 161 Tex. 184, 188, 338 S.W.2d 945, 948 (1960) (holding that a trial court's judgment ordering the defendant to furnish an accounting to the plaintiff was final because the trial court had determined the equities and rights of the parties and the rendering of profits, if any, was a ministerial act incident to the final judgment); *see also Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988) (noting in an original proceeding that its opinion in a prior action between the petitioner and the respondent had granted the petitioner his prayer for relief of an accounting); *Unif. Mfg., Inc. v. Earl's Apparel, Inc.*, No. 11-06-00105-CV, 2007 WL 2390749, at *6 (Tex. App.—Eastland Aug. 23, 2007, no pet.) (mem. op.) (affirming judgment that required the appellee to provide an accounting); *Dearing Inc. v. Spiller*, 824 S.W.2d 728, 735 (Tex. App.—Fort Worth 1992, writ denied) (affirming a judgment that called for an accounting by the appellant); *Hughes v. Cole*, 585 S.W.2d 865, 866, 869 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.) (affirming judgment awarding the plaintiff fifteen percent of the defendants' net taxable income over three years and ordering the defendants to render an accounting to the plaintiff reflecting the amount of their net taxable income for that period); *First Nat'l Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 142, 151 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.) (affirming trial court's judgment ordering the appellant to render an accounting of all income and expenses from the oil production from a specific tract); *Skyland Developers, Inc.*

concerning why it was improper in this case. Thus, the fact that the trial court ordered Fuller to provide an accounting rather than establishing the amount of indebtedness through a trial does not by itself require this court to reverse the trial court's judgment. And we note that Morris herself agreed to an assignment that left undetermined when, if ever, she would receive any interest and that did not set out any obligation to provide an accounting.[25] We overrule the remainder of Morris's third issue.

Morris makes a similar argument under her fourth issue, asserting (with no citation to authority[26]) that the trial court's order improperly delegates to Fuller the right to unilaterally determine when, if ever, Morris will be entitled to receive anything from her "net profit interest." We overrule this part of her issue on the grounds discussed above regarding her third issue.

Morris also argues in her fourth issue that the part of the judgment stating that "in determining the existing indebtedness, [Fuller] shall be given full credit for all indebtedness which she has incurred upon behalf of the [joint venture] and for

---

*v. Sky Harbor Assocs.*, 586 S.W.2d 564, 566, 573 (Tex. Civ. App.—Corpus Christi 1979, no writ) (affirming a judgment requiring defendants to provide the plaintiff with an accounting for all income and expenses incurred in connection with the management and operation of an apartment over an eight-month period).

[25]*See* Tex. R. App. 44.1(a); *cf. Luling Oil & Gas Co. v. Humble Oil & Ref. Co.,* 144 Tex. 475, 481, 191 S.W.2d 716, 720 (1945) (noting that the contract gave Humble the duty to provide a monthly statement of accounts, "both credits and debits, necessarily made in the operation of the property").

[26]*See* Tex. R. App. 38.1(i).

15

all benefit that she has obtained in the interest of the [joint venture] by her efforts" grants Fuller relief not requested in her pleadings and is vague and unenforceable. The trial court found that Fuller had fully accounted for the joint venture's income. Under the terms of the assignment, Morris was not entitled to receive anything under the joint venture until "payout of all indebtedness of" the joint venture. The trial court found that this provision was enforceable and that Morris was "not entitled to any net proceeds of the Joint Venture interests at the time of final trial." Thus, the trial court impliedly found that the evidence was sufficient to show that some indebtedness still existed, but not the exact amount. The trial court ordered an accounting for Morris's benefit so that she could determine at what point she would be entitled to receive income from the joint venture.

Morris complains, however, that the trial court awarded Fuller relief that she did not request in her pleadings because of how the trial court determined that the joint venture's indebtedness should be calculated. Fuller asked the trial court to uphold the assignment, and it did so. By asserting that Morris had no right to proceeds from the joint venture, Fuller impliedly asked the trial court to determine that the joint venture still had outstanding indebtedness, and the trial court did so. But Fuller did not ask for an accounting—Morris did[27]—so Fuller

---

[27] *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) ("[A] party cannot complain on appeal that the trial court took a specific action that the complaining party requested.").

16

would have had no reason to ask that anything in particular be considered in rendering the accounting. Furthermore, an accounting by its nature takes into consideration credits and liabilities,[28] and Morris agreed to the assignment providing that the joint venture's indebtedness had to be paid before she would receive anything from the joint venture. The trial court found that this assignment was valid and enforceable. Morris makes no argument about why the trial court's order did not comply with proper methods of conducting an accounting, was not a proper way to calculate a joint venture's indebtedness, or was not in accordance with the sisters' agreement.[29] Accordingly, we overrule this part of Morris's fourth issue.

Morris further argues that the language in the judgment ordering that Fuller receive credit for all indebtedness she incurred on behalf of the joint venture is vague and unenforceable. Morris fails, however, to cite any law in support of this argument and fails to explain why this part of the judgment is too vague or is unenforceable.[30] We overrule the remainder of Morris's fourth issue.

---

[28]*See New Jersey Bank (N.A.) V. Knuckley*, 637 S.W.2d 920, 921 (Tex. 1982) (defining an account as "the system of recording and summarizing business and financial transactions in books and analyzing, verifying, and reporting the results"); *Lewis v. Xium Corp.*, No. 07-08-0219-CV, 2009 WL 1953419, at *7 n.19 (Tex. App.—Amarillo July 8, 2009, pet. denied) (noting that "[a]n accounting is also defined as a 'record of debit and credit entries to cover transactions involving a particular item'").

[29]*See* Tex. R. App. P. 38.1(i).

[30]*See id.*; *Gray*, 259 S.W.3d at 294.

17

Having overruled Morris's four issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED:  October 6, 2011