02-09-442-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00442-CV

 

 


 
 
 Frances Jane Fuller Jackson Morris
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Margaret Ann Fuller
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 67th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellee
Margaret Ann Fuller (Fuller) sued her sister Appellant Frances Jane Fuller
Jackson Morris (Morris) for tortious interference with contract.  Morris
countersued for breach of fiduciary duty and for an accounting for the income
of the sisters’ joint venture.  Morris appeals from the trial court’s
take-nothing judgment on her breach of fiduciary duty claim and its judgment
awarding an accounting to determine the existing indebtedness of the joint
venture.  In four issues, Morris argues that the case should have been
transferred under a mandatory venue provision; that the assignment by which the
trial court found she had assigned her interest in the joint venture to her
sister was forged; that the trial court’s judgment incorrectly calculated her
interest under the assignment and should have ordered that her interest became
effective on September 11, 2009; and that the trial court’s judgment is vague
and unenforceable and improperly awarded Fuller relief not requested in her
pleadings.  Because we hold that the mandatory venue provision did not apply
and that the trial court’s judgment was not erroneous, we affirm. 

Robert
P. Fuller owned interests in oil, gas, and mineral properties in Hemphill
County, Texas, and in 1972, he conveyed some of these interests to a joint
venture to be owned equally by his two daughters, Morris and Fuller.  The joint
venture was originally called the Cope-Jackson Joint Venture (at the time,
Morris was married to Leete Jackson III, and Fuller was married to John Cope).

In
1984, after Fuller had divorced Cope and remarried, the sisters formed a new
joint venture, the Lydick-Jackson Joint Venture (reflecting Fuller’s new last
name).[2]  Their
father and their brother, Rex Fuller, were appointed as agents to manage the
joint venture.

Robert
P. Fuller died in 1988, and in 1989, the sisters terminated Rex as the joint
venture’s agent and hired Gruy Petroleum Management to manage their interests. 
A Gruy report dated February 9, 1989, reflected the joint venture’s outstanding
loans, including $2.6 million owed to First National Bank of Lubbock, $4.5
million owed to Continental Illinois National Bank, and $7.5 million owed to
two other banks.  The report noted that no payments were being made on the note
to Continental and that FDIC intervention was “probable.”  The report then
noted that “[a]lmost all properties are mortgaged to the lending institutions,”
that “[i]t will be necessary to continue receiving revenue from the properties
pledged to [Continental] for the [joint venture] to pay interest payments,
lease operating expenses, and receive any revenue,” and that if the FDIC
intervened, “additional monies will be required to service interest on the
loan.”

In
February 1992, the FDIC (as successor in interest to Continental) obtained a
judgment of $4,500,096.50 against Morris, Fuller, and Rex (individually and as
executor of their father’s estate), jointly and severally, and perfected liens
against their oil and gas interests.  In May 1992, First National Bank of
Lubbock notified the three siblings that each of them had failed to fulfill
provisions of a 1990 settlement agreement they had made with the bank.  Among
other things, Morris had agreed to assign to Rex her interest in the joint
venture but had not done so.  The letter states that “[u]nless the above is
completed the bank will determine the contract breached and continue to hold
[Morris] responsible for the original indebtedness.”

Fuller
testified at trial that because of the FDIC judgment, Morris wanted to assign
her interest in the joint venture to Fuller.  On May 8, 1992, an assignment of
Morris’s interest in the joint venture, dated May 7, 1992, (the assignment) was
filed in Lubbock, Texas, by family friend John Walker.  The assignment states
that “[Morris] . . . does hereby transfer and assign unto [Fuller] all of [Morris’s]
rights, title, and interest” in the joint venture, effective as of January 1,
1991.  The assignment also states that “[a]fter payout of all indebtedness of [the
joint venture] and that specific note of [Fuller] at First National Bank in
Lubbock, Texas, [Morris] whall [sic] be entitled to a 40% net profit interest
in the properties conveyed in this assignment.”  Because of the assignment,
First National Bank released Morris from her obligation for the debt owed by
Fuller, Morris, and Rex.

In
1995, Fuller and Rex negotiated an agreement with the FDIC under which the FDIC
forgave a large portion of the outstanding judgment.  The debt forgiveness
caused Fuller to incur tax liability of over $2.5 million.  The IRS did not
attempt to collect from Morris any taxes owed by the joint venture interests
for the years after the assignment.

In
2006, Fuller sued Morris and Devon Louisiana Corporation in Tarrant County,
asserting a claim for breach of contract against Devon and a claim for tortious
interference with contract against Morris.  She alleged that their father had
conveyed mineral interests to them “in the nature of a joint venture”; that
Devon was contractually obligated to pay royalties from oil and gas production
on the subject properties; that Morris had assigned to Fuller her interest in
the joint venture; that in June 2005, Morris had contacted Devon and claimed
that she had not executed the assignment and that she was entitled to
royalties; and that as a result, Devon stopped making payments to Fuller.  Fuller
alleged that venue was proper in Tarrant County because the contract payments
were sent to Tarrant County and Fuller resided in Tarrant County.  Fuller
subsequently dismissed her claims against Devon.

Morris
filed a motion to transfer venue to Hemphill County on the ground that Fuller’s
suit involved title to real property located in Hemphill.  The trial court
denied the motion.  Morris also countersued Fuller for breach of fiduciary duty
and for an accounting.

At
the bench trial, Morris testified that she did not sign the assignment.  John
Weldon, a forensic document examiner, testified that in his opinion, the
signature on the assignment was Morris’s genuine signature.  Fuller testified
that Morris had personally given her a copy of the assignment and that she,
Morris, and Morris’s husband went together to take the assignment to First
National Bank.

After
the trial, the trial court made the following findings of fact:

•        Morrios had assigned her interest in the joint
venture to Fuller in order to avoid liability under the FDIC judgment and
“possible IRS issues looming.”

•        In 1995, Fuller and Rex reached an agreement
with the FDIC in which the FDIC agreed to forgive a large part of the judgment
owed.  This forgiven debt was reported to the IRS, increasing Fuller’s personal
tax liability to over $2.5 million.  

•        Because of the assignment, the IRS did not
attempt to collect from Morris any of the tax debt owed by the joint venture
for the years after the assignment.

•        After the assignment, Morris never claimed any
profit or loss from the joint venture interests on her personal income tax
returns.

•        Morris and Fuller were sued in 2005 for unpaid
property taxes in Hemphill County.  During Fuller’s attempts to have the taxes
paid through proceeds received from Devon, Morris intentionally made false
representations and claims to some of the monies Devon held.  Her claims forced
Devon to suspend payments to Fuller, and Fuller consequently incurred late penalties
on the taxes.

•        Morris breached the terms of the assignment, but
no evidence established the amount of damages incurred by Fuller as a result of
this breach.

•        Once all of the indebtedness of the joint
venture is satisfied, Morris’s reversionary interest in the net proceeds of the
joint venture shall occur.

•        Under the plain language of the assignment,
Morris is not entitled to the benefit from the actions of Fuller and Rex in
reducing the amount of the FDIC judgment.

The
trial court signed a judgment incorporating its findings and conclusions and
ordering that “the relationship between [Fuller] and [Morris] regarding their
respective rights to the [joint venture] shall and is hereby governed by the
terms of [the assignment].”  The judgment ordered that Fuller prepare an
accounting setting forth the existing indebtedness of the joint venture.  The
trial court further ordered that after that indebtedness has been paid in full,
Morris “shall receive twenty (20%) percent of the net profits of the [joint venture]
thereafter (representing forty percent (40%) of the fifty percent (50%)
interest assigned by [Morris] to [Fuller] in [the assignment]).”  The trial
court also ordered that Morris take nothing on her breach of fiduciary duty
counterclaim.  Morris now appeals.

In
her first issue, Morris argues that venue should be transferred to Hemphill
County, Texas, where the mineral properties in question are located, because
there is no probative evidence in the record to overcome the mandatory venue
provision in Texas Civil Practice and Remedies Code section 15.011.[3]  Section 15.011
applies to: (1) actions for recovery of real property or for recovery of an
estate or interest in real property, (2) actions for partition of real
property, (3) actions to remove encumbrances from the title to real property,
(4) actions for recovery of damages to real property, and (5) actions to quiet
title to real property.[4] 
Any of these specified types of actions must be brought in the county in which
part or all of the property is located.[5] 
Morris argues that Fuller’s suit was one to recover oil and gas royalties, a
royalty interest is an interest in land, and therefore venue for Fuller’s suit
is mandatory in the county where the mineral interest is located.

The
dominant purpose of a suit determines whether it falls within the mandatory
venue provision.[6] 
To determine the nature of the suit, we look at the facts alleged in the
plaintiff’s petition, the rights asserted, and the relief sought.[7]  Thus, for
example, if the plaintiff’s petition is for a partnership accounting and
dissolution, or to construe a written trust agreement, section 15.011 does not
apply, even though the partnership or trust may own real property.[8]  If, however,
ownership of the property is in dispute, the mandatory venue provision applies.[9]  

Fuller
sought to recover from Morris royalties that had accrued under the contract
with Devon and that Morris had caused Devon to pay to her.  Accrued royalties
are interests in personal property.[10] 
Section 15.011 has no application to personal property.[11]

Furthermore,
under the language of section 15.011 and the Supreme Court’s opinion in Yzaguirre,
if the suit is not one to recover damages to real property and ownership of the
property is not in dispute, section 15.011 does not apply.[12]  Looking at the pleadings in
their entirety,[13]
Fuller did not dispute ownership of the royalty interests themselves or the
extent of the royalty interest.  Her claim was that Morris falsely denied
making the assignment of her joint venture interest, not that the
sisters disputed with whom Devon had executed the lease or who owned the
mineral interests.  Thus, it was the parties’ rights and interests in the joint
venture on which Fuller based her claim.  Fuller had to prove the existence of
the mineral lease with Devon in order to prove her claim.[14]  But that does not make
section 15.011 applicable because establishing ownership of property or an
interest in property was not the dominant purpose of Fuller’s suit.[15]  Fuller was not
using the tortious interference claim “as an indirect means of quieting title
to the mineral estate” in the property.[16] 
We overrule Morris’s first issue.

In
Morris’s second issue, she argues that the assignment through which Fuller
claims title to the minerals is invalid because it was forged when Fuller
recorded it in Lubbock County on May 8, 1992, and forged again by a different
person four years later when Fuller recorded it in Hemphill County on May 10,
1996.  In her briefing on this issue, Morris merely discusses the evidence that
she contends would support a finding that she did not execute the assignment. 
Because Morris discusses evidence that she argues would support a finding that
the assignment was forged, and because she states that “[t]here is no evidence
that anyone saw [her] sign” the assignment, we construe her argument to be that
the evidence was not legally sufficient to support the trial court’s finding
that the assignment was valid.

Because
Morris cites no law in support of her issue and does not provide “clear and
concise argument” to support her issue, we hold that this issue is waived as
inadequately briefed.[17] 
In the interest of justice, however, we note that evidence supports the trial
court’s finding that the assignment was not forged.  This evidence includes
Fuller’s testimony that Morris had asked her to accept an assignment and had
given her a copy of the assignment and the testimony of a forensic document
examiner who stated that in his opinion, the signature on the assignment was
Morris’s.[18] 
Accordingly, we overrule Morris’s second issue.

Morris
argues in her third issue that the trial court erred by interpreting the
assignment and limiting her net profit interest to only twenty percent.  We
disagree.  The assignment states that Morris “does hereby transfer and assign
unto [Fuller] all of [Morris’s] rights, title, and interest . . . in the
Lydick-Jackson Joint Venture and the Cope-Jackson Venture.”  The assignment
further states that “[a]fter payout of all indebtness [sic] of [the]
Lydick-Jackson Joint Venture and that specific note of [Fuller] at First
National Bank in Lubbock, Texas, [Morris] whall [sic] be entitled to a 40% net
profit interest in the properties conveyed in this assignment.”  Morris also
“expressly reserves the sum of $6,000 to herself to be repaid as expeditiously
as possible.”

The
assignment plainly states that after the joint venture’s indebtedness and
Fuller’s note to First National Bank were paid, Morris would be entitled to “a
40% net profit interest in the properties conveyed in this assignment.”  [Emphasis
added.]  The “properties conveyed in this assignment” were Morris’s fifty
percent interest in the joint venture.  Thus, under the language of the
assignment, when the indebtedness had been paid, Morris would be entitled to
forty percent of her former fifty percent interest in the joint venture, that
is, twenty percent of the total interest in the joint venture.[19]  Morris cites to no authority
in support of a different construction of the assignment language.[20]

Morris
argues that the assignment gave her a reversionary interest in forty percent of
all of the mineral interests owned by the joint venture.  But Morris’s
construction contradicts the language of the assignment, and Morris makes no
argument for why the trial court erred by not disregarding the assignment’s
plain terms.[21]

In
her reply brief, Morris argues, with no citation to authority, that this
interpretation of the assignment is incorrect because if the assignment had
conveyed Morris’s entire fifty percent interest, “then the joint venture ceases
to exist and the assignment is in essence a transfer of the entire interest
from the [joint venture] to [Fuller].”  The trial court agreed with Morris’s
assessment that the joint venture ceased to exist, concluding that upon Morris’s
assignment, the sisters “were no longer involved in what could legally be
considered a joint venture, but instead were parties operating under the
express terms of the” assignment.  Morris offers no challenge to that
conclusion on appeal and makes no explanation of why, if the assignment did
terminate or alter the terms of the joint venture, the sisters were not legally
allowed to do so, or why such an effect of the assignment would make the trial
court’s judgment erroneous.  Accordingly, we overrule this part of Morris’s
third issue.[22]

Morris
further argues that the trial court failed to find what, if anything, remains
on the existing indebtedness of the joint venture, and, accordingly, the
judgment should be modified so that Morris’s reversionary interest commenced on
September 11, 2009, the date of the judgment.  She argues, with no citation to
authority,[23]
that Fuller failed to prove what remains owed by the joint venture and that “it
should now be too late, after the trial is over, for [Fuller] to be allowed to
unilaterally determine the amount she claims to be owed and for [Morris] to be
required to relitigate that issue.”

The
trial court determined that there was sufficient evidence to find that some
indebtedness still existed at the time of trial and therefore Morris was not
entitled to any proceeds from the joint venture interest, but it could not
calculate the definite amount outstanding.  A judgment may properly order the
relief of an accounting, and a judgment ordering an accounting by an interested
party is not in and of itself improper.[24] 
Morris makes no argument and cites no authority concerning why it was improper
in this case.  Thus, the fact that the trial court ordered Fuller to provide an
accounting rather than establishing the amount of indebtedness through a trial
does not by itself require this court to reverse the trial court’s judgment. 
And we note that Morris herself agreed to an assignment that left undetermined
when, if ever, she would receive any interest and that did not set out any
obligation to provide an accounting.[25] 
We overrule the remainder of Morris’s third issue.

Morris
makes a similar argument under her fourth issue, asserting (with no citation to
authority[26])
that the trial court’s order improperly delegates to Fuller the right to
unilaterally determine when, if ever, Morris will be entitled to receive
anything from her “net profit interest.”  We overrule this part of her issue on
the grounds discussed above regarding her third issue.

Morris
also argues in her fourth issue that the part of the judgment stating that “in
determining the existing indebtedness, [Fuller] shall be given full credit for
all indebtedness which she has incurred upon behalf of the [joint venture] and
for all benefit that she has obtained in the interest of the [joint venture] by
her efforts” grants Fuller relief not requested in her pleadings and is vague
and unenforceable.  The trial court found that Fuller had fully accounted for
the joint venture’s income.  Under the terms of the assignment, Morris was not
entitled to receive anything under the joint venture until “payout of all
indebtedness of” the joint venture.  The trial court found that this provision
was enforceable and that Morris was “not entitled to any net proceeds of the
Joint Venture interests at the time of final trial.”  Thus, the trial court
impliedly found that the evidence was sufficient to show that some indebtedness
still existed, but not the exact amount.  The trial court ordered an accounting
for Morris’s benefit so that she could determine at what point she would be
entitled to receive income from the joint venture.

Morris
complains, however, that the trial court awarded Fuller relief that she did not
request in her pleadings because of how the trial court determined that the
joint venture’s indebtedness should be calculated.  Fuller asked the trial
court to uphold the assignment, and it did so.  By asserting that Morris had no
right to proceeds from the joint venture, Fuller impliedly asked the trial
court to determine that the joint venture still had outstanding indebtedness,
and the trial court did so.  But Fuller did not ask for an accounting—Morris
did[27]—so
Fuller would have had no reason to ask that anything in particular be
considered in rendering the accounting.  Furthermore, an accounting by its
nature takes into consideration credits and liabilities,[28] and Morris agreed to the
assignment providing that the joint venture’s indebtedness had to be paid
before she would receive anything from the joint venture.  The trial court found
that this assignment was valid and enforceable.  Morris makes no argument about
why the trial court’s order did not comply with proper methods of conducting an
accounting, was not a proper way to calculate a joint venture’s indebtedness,
or was not in accordance with the sisters’ agreement.[29]  Accordingly, we overrule
this part of Morris’s fourth issue.

Morris
further argues that the language in the judgment ordering that Fuller receive
credit for all indebtedness she incurred on behalf of the joint venture is
vague and unenforceable.  Morris fails, however, to cite any law in support of
this argument and fails to explain why this part of the judgment is too vague
or is unenforceable.[30] 
We overrule the remainder of Morris’s fourth issue.

Having
overruled Morris’s four issues, we affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

 

DELIVERED:  October 6, 2011









[1]See Tex. R. App. P. 47.4.





[2]Fuller also at some point
went by the name Ann Fuller Clayton.





[3]Tex. Civ. Prac. & Rem.
Code Ann. § 15.011 (West 2002).





[4]Id.





[5]Id.





[6]Scarth v. First Bank
& Trust Co., 711 S.W.2d 140, 142 (Tex. App.—Amarillo 1986, no writ).





[7]Id.





[8]See Shellberg v.
Shellberg, 428 S.W.2d 117, 121 (Tex. Civ. App.—Fort Worth 1968, writ dism’d);
Kirshenbaum v. Smith, 480 S.W.2d 500, 503 (Tex. Civ. App.—El Paso 1972,
no writ).





[9]Yzaguirre v. KCS Res.,
Inc., 53 S.W.3d 368, 371 (Tex. 2001).





[10]Id. (citing Tex.
Oil & Gas Corp. v. Moore, 630 S.W.2d 450, 452–53 (Tex. App.—Corpus
Christi 1982, writ dism’d) for the proposition that “claims for past and
accrued royalties are properly characterized as claims to recover personalty”);
Anadarko E & P Co., LP v. Clear Lake Pines, Inc., 03-04-00600-CV,
2005 WL 1583506, at *3 (Tex. App.—Austin July 7, 2005, no pet.) (mem. op.); see
also Amoco Prod. Co. v. Wood, 113 S.W.3d 462, 466 (Tex.
App.—Texarkana 2003, no pet.) (“Royalties become personal property once the
mineral estate is severed from the real estate at the well head.”).





[11]See Tex. Civ.
Prac. & Rem. Code Ann. § 15.011.





[12]Yzaguirre, 53
S.W.3d at 371 (stating that “[a]lthough oil and gas leases are an interest in
real property, the applicable version of section 15.011 [in effect at that
time] applied only when ownership of the property was in dispute” and noting
that the legislature had since amended the section to include actions for
recovery of damages to real property).





[13]See Scarth, 711
S.W.2d at 142 (noting that we consider the plaintiff’s petition, the rights asserted,
and the relief sought); see also KJ Eastwood Invs., Inc. v. Enlow, 923
S.W.2d 255, 258 (Tex. App.—Fort Worth 1996, no writ) (determining the primary
purpose of the plaintiff’s suit from reading the entire petition and concluding
that the suit concerned an interest in property only secondarily).





[14]See All Am. Tel., Inc.
v. USLD Commc’ns, Inc., 291 S.W.3d 518, 531 (Tex. App.—Fort Worth 2009,
pet. denied) (noting that the existence of a contract subject to interference
is an element of a claim for tortious interference with contract).





[15]See Yzaguirre, 53
S.W.3d at 371 (holding that section 15.011 did not apply to the dispute over
the obligations owed to royalty owners under the terms of mineral leases
because ownership of the royalty interests was not in dispute).





[16]Cf. In re Applied
Chem. Magnesias Corp., 206 S.W.3d 114, 119 (Tex. 2006) (holding that
section 15.011 applied because the plaintiff was using a declaratory judgment
action “as an indirect means of quieting title to the mineral estate” in the
land at issue); see also Renwar Oil Corp. v. Lancaster, 154 Tex. 311,
315, 276 S.W.2d 774, 776 (1955) (“Where the trial court, as between the
parties, must either locate a survey on the ground (by either surveying data or
estoppel or both) in order to determine a dispute as to the amount of royalty
due, or must determine that one party is estopped to deny a certain location,
the suit is essentially one for the recovery of land and to quiet title.”).





[17]See Tex. R. App.
P. 38.1(i) (requiring appellate briefs to contain appropriate citations to
authorities); Gray v. Nash, 259 S.W.3d 286, 294 (Tex. App.—Fort Worth
2008, pet. denied) (noting that an argument may be waived if inadequately
briefed).





[18]See Webb v. Jorns,
488 S.W.2d 407, 411 (Tex. 1972) (“It is an old and familiar rule that the fact
finder may resolve conflicts and inconsistencies in the testimony of any one
witness as well as in the testimony of different witnesses.”).





[19]See Petro Pro, Ltd. v.
Upland Res., Inc., 279 S.W.3d 743, 749–50 (Tex. App.—Amarillo 2007, pet.
denied) (determining the nature and scope of an unambiguous assignment from its
plain language).





[20]See Tex. R. App.
P. 38.1(i).





[21]See id.





[22]See Tex. R. App.
P. 38.1(i), 44.1(a).





[23]See Tex. R. App.
P. 38.1(i).





[24]See, e.g., Ferguson v.
Ferguson, 161 Tex. 184, 188, 338 S.W.2d 945, 948 (1960) (holding that a
trial court’s judgment ordering the defendant to furnish an accounting to the
plaintiff was final because the trial court had determined the equities and
rights of the parties and the rendering of profits, if any, was a ministerial
act incident to the final judgment); see also Jones v. Strauss, 745
S.W.2d 898, 900 (Tex. 1988) (noting in an original proceeding that its opinion
in a prior action between the petitioner and the respondent had granted the
petitioner his prayer for relief of an accounting); Unif. Mfg., Inc. v. Earl’s
Apparel, Inc., No. 11-06-00105-CV, 2007 WL 2390749, at *6 (Tex.
App.—Eastland Aug. 23, 2007, no pet.) (mem. op.) (affirming judgment that
required the appellee to provide an accounting); Dearing Inc. v. Spiller,
824 S.W.2d 728, 735 (Tex. App.—Fort Worth 1992, writ denied) (affirming a
judgment that called for an accounting by the appellant); Hughes v. Cole,
585 S.W.2d 865, 866, 869 (Tex. Civ. App.—Tyler 1979, writ ref’d n.r.e.)
(affirming judgment awarding the plaintiff fifteen percent of the defendants’
net taxable income over three years and ordering the defendants to render an
accounting to the plaintiff reflecting the amount of their net taxable income
for that period); First Nat’l Bank in Dallas v. Kinabrew, 589 S.W.2d 137,
142, 151 (Tex. Civ. App.—Tyler 1979, writ ref’d n.r.e.) (affirming trial court’s
judgment ordering the appellant to render an accounting of all income and
expenses from the oil production from a specific tract); Skyland Developers,
Inc. v. Sky Harbor Assocs., 586 S.W.2d 564, 566, 573 (Tex. Civ. App.—Corpus
Christi 1979, no writ) (affirming a judgment requiring defendants to provide
the plaintiff with an accounting for all income and expenses incurred in
connection with the management and operation of an apartment over an eight-month
period).





[25]See Tex. R. App.
44.1(a); cf. Luling Oil & Gas Co. v. Humble Oil & Ref. Co., 144
Tex. 475, 481, 191 S.W.2d 716, 720 (1945) (noting that the contract gave Humble
the duty to provide a monthly statement of accounts, “both credits and debits,
necessarily made in the operation of the property”).





[26]See Tex. R. App.
38.1(i).





[27]See Tittizer v. Union
Gas Corp., 171 S.W.3d 857, 862 (Tex. 2005) (“[A] party cannot complain on
appeal that the trial court took a specific action that the complaining party
requested.”).





[28]See New Jersey Bank
(N.A.) V. Knuckley, 637 S.W.2d 920, 921 (Tex. 1982) (defining an account as
“the system of recording and summarizing business and financial transactions in
books and analyzing, verifying, and reporting the results”); Lewis v. Xium
Corp., No. 07-08-0219-CV, 2009 WL 1953419, at *7 n.19 (Tex. App.—Amarillo
July 8, 2009, pet. denied) (noting that “[a]n accounting is also defined as a ‘record
of debit and credit entries to cover transactions involving a particular item’”).





[29]See Tex. R. App.
P. 38.1(i).





[30]See id.; Gray,
259 S.W.3d at 294.