## LULING OIL & GAS COMPANY V. HUMBLE OIL & REFINING COMPANY.

No. A-576. Decided December 29, 1945.
Rehearing overruled January 30, 1946.
(191 S. W., 2d Series, 716.)

*Fulbright, Crooker, Freeman & Bates, Chas. W. Bell, Bryan, Suhr, & Bering* and *E. H. Suhr,* all of Houston and *George Cannon,* of San Antonio, for petitioner.

It was error for the Court of Civil Appeals to hold that petitioner's claim was barred by the four years statute of limitation, when existence of such net profits were not disclosed to petitioner until after the filing of this suit and after years spent in investigation, correspondence between the parties in which

petitioner sought information, the employment of independent auditors to make an audit, and the filling of a bill of discovery in connection with this suit. Brown v. Neyland, 161 S. W. (2d) 833; Id. 141 Texas 253, 170 S. W. (2d) 107; Miller v. Goff, 68 Pac. (2d) 915.

*W. J. Howard, K. W. Gilmore, Rex G. Baker* and *R. E. Seagler*, all of Houston, for respondent.

Respondent having carried out the terms of its contract and kept petitioner fully advised as to the operations and the receipts and disbursements, would not by virtue of its trusteeship or agency, be deprived of any of its legal defenses urged in good faith against the claims of petitioner, and petitioner's claims having accrued more than four years before its suit was filed and it neither pleaded nor proved any fact that would take it out of the statute of limitation, they could not recover thereon. Powers v. Schubert, 220 S. W. 120; Lewis v. Saylors 37 S. W. (2d) 760; Owen v. King, 130 Texas 614, 111 S. W. (2d) 695.

MR. JUSTICE SLATTON delivered the opinion of the Court.

Luling Oil & Gas Company entered into a contract with Humble Oil & Refining Company on the 30th day of July, 1928, wherein Luling obligated itself to sell to Humble an undivided one-half interest in and to certain oil and gas leases covering land situated in Caldwell County, Texas. The consideration for the contract was $100.00 per acre and the agreement of Humble to drill one well on the premises at its own cost and expense. The contract gave Humble exclusive charge and control of all operations. All expenses of drilling, developing, operating and equipping said property after the completion of said first well, as well as all expenses of treating, handling, and marketing the oil and gas was to be charged to the joint account. Luling was not liable for its one-half of operating expenses, but Luling's part of such expenses was to be borne by and paid out of its one-half interest in production. The contract contains provisions with reference to charges to be made in the operation of the property between the corporations. The Humble, according to the contract, was to keep accurate records of all joint accounts showing the cost and expenses incurred and charges made and all credits made and received. The contract further provides:

"Within one month after the close of each calendar month Second Party (Humble) shall furnish to First Party (Luling) a statement of investment and expenses incurred and credits

and receipts during such calendar month. Any exceptions to the statement as rendered by Second Party must be made by First Party (Luling) within forty-five days after the receipt of same; and if no exception is made within such time, then such statement shall be conclusively considered as correct. If such statement is incorrect First Party shall be credited for any excess payment made and shall be debited by any excess credit allowed. The provisions of this paragraph, however, shall not prevent annual adjustment of physical property to inventory as above provided."

The contract further provides:

"All proceeds received from the sale of oil and gas produced and saved from the said premises and pertaining to the working interest shall be first credited to joint account; and if any excess remains after the payment of all charges to joint account then accrued, Second Party shall pay the First Party its one-half of the sums remaining."

The contract further provided that Humble, if it desired, had the right to take over such products and to pay for the same as follows:

"(a) For Luling's interest in oil the average prevailing current posted field price per barrel on the date of respective runs to pipe lines of Magnolia Petroleum Company, The Texas Company, Gulf Refining Company and Humble Oil & Refining Company, and such companies as may be purchasing oil in the field where said premises are located and posting prices therefor. * * *"

The contract further provides:

"Humble shall have the right at any time to transfer its one-half undivided interest in any particular lease or leases affected hereby to Luling and thereafter as to any such lease or leases be relieved from any further liability hereunder or under the terms of such leases."

The contract further provided for a preferential right of either party to buy the interest of the other, providing it was willing to pay for such interest at a price which was offered therefor by another in good faith. The Humble drilled and brought into production some sixty-odd wells, a number of which were in production at the time of the trial of this lawsuit in 1942. This suit was filed on the 13th day of November, 1940, in the district court of Harris County. Luling Oil & Gas

Company sought a recovery of a large sum of money from Humble Oil & Refining Company alleged to be due because of the Humble's failure to properly account for oil produced and to properly charge expenses in the production and sale of oil which was found under leases owned by both corporations.

The trial court submitted seven special issues to the jury. The trial court entered judgment on the verdict and in part notwithstanding the verdict. The judgment was in favor of Luling Oil & Gas Company for the sum of $127,827.30.

Humble Oil & Refining Company appealed to the Court of Civil Appeals at Galveston and Luling filed cross assignments of error. The Honorable Court of Civil Appeals at Galveston affirmed the judgment of the trial court on all issues determined by the trial court in Humble's favor of which no complaint was made in the Court of Appeals by Luling; reversed and rendered the judgment of the trial court to the extent of $73,260.45 because the same was barred by the four year statute of limitation, and allowed the judgment of $2,690.47 to stand in favor of Luling because not shown to have been barred by the four year statute of limitation; overruled Luling's cross assignments of error and affirmed the judgment of the lower court thereon. The court remanded the cause to the trial court for another trial upon the issues or claims of (a) profit made by Humble on fresh water; (b) profit made by Humble on manufacturer's profit on breaxit and lubricating oil; (c) profit on trucks and tractors; and (d) profit on transporting secondhand material. (Opinion not published) Since Humble made no application for a writ of error, we are concerned only with the points of error assigned by Luling.

Luling complains of the ruling of the Court of Civil Appeals to the effect that all amounts sued for which became due more than four years prior to the filing of this suit are barred by the four year statute of limitation. Its contentions are urged through four points of error, viz:

1. That the contract under which the rights of the litigants arose creates a joint adventure or mining partnership, therefore Section 3 of Article 5527, Revised Civil Statutes of Texas, 1925, is applicable. Hence limitation does not commence to run against a cause of action for a general accounting until cessation of the business of the mining partnership.

2. That the Humble cannot avoid the effect of Section 3 of Article 5527 on the theory that the acts of the corporations in

entering into a joint adventure or mining partnership were ultra vires.

3. Because it was within the respective corporate powers and purposes of the corporations to explore, develop and produce oil and gas as was done under the contract involved.

4. The claims were not barred by the four year statute of limitation for the reason that the exclusive control of operations and bookkeeping assumed under the contract by the Humble constituted it a trustee for the Luling, and there being no repudiation of the trust the bar of the statute cannot be invoked.

5. Under the evidence the Humble as trustee of an express trust refused to disclose secret profits to Luling until after this suit was filed, hence Humble cannot invoke the four year statute of limitation.

Humble contends that Section 3 of Article 5527 has no application to the facts of this case, but rather that the cause of action asserted by Luling is founded upon a contract in writing, therefore the four year statute is applicable.

Whether the relationship of joint adventure or mining partnership existed between Luling and Humble under the contract does not seem to us to be the controlling issue, since the rights of the parties are fixed by the terms of their agreement. Under our view of the case the real and determinative question is, does the four year statute apply as contended by Humble, or does Section 3 of Article 5527 apply as contended by Luling: Article 5527 in part reads:

"There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

"1. Actions for debt where the indebtedness is evidence by or founded upon any contract in writing.

\*   \*   \*   \*   \*   \*   \*

"3. Actions by one partner against his co-partner for a settlement of the partnership accounts, or upon mutual and current accounts concerning the trade of merchandise between merchant and merchant, their factors or agents; and the cause of action shall be considered as having accrued on a cessation of the dealings in which they were interested together."

The parties to this action stipulated that the contract is now a valid and subsisting agreement under which the oil and gas

leases are being operated. They stand on the rights granted to them under it. Neither company seeks to set the contract aside. The contract required Humble within one month after the close of each calendar month to furnish Luling with a statement of investment and expenses incurred and credits and receipts during such calendar month. Thus a settlement of accounts between the parties within one month after the close of each calendar month was clearly intended by the use of the quoted language. This provision clearly fixed the time of adjusting the accounts made necessary in the operation of the jointly owned leases and the time when the Humble was to pay whatever was due Luling, if any there was, over and above the necessary operating charges against the leases. Under this provision it was the duty of the Humble within the time specified to furnish Luling with a correct statement of accounts, both credits and debits, necessarily made in the operation of the property. More specifically, the proceeds received from the sale of oil and gas were first to be credited to the joint account, and if any excess remained after the payment of all charges to the joint account then accrued Humble shall pay Luling its one-half of the sums remaining, regardless of whether the relationship of joint adventure or mining partnership existed between the parties, the provisions of the contract clearly fix the time of adjusting the accounts and the time when whatever was due Luling was to be paid under it. Luling has stipulated that the oil and gas leases jointly owned by it and the Humble were at the time of the trial of this cause being operated under the contract. It is seen that no cessation of the dealings in which Humble and Luling are interested together has occurred. It is not contended that Humble and Luling are partners in the common and ordinary sense of the term; neither is it contended that the parties to this suit have engaged in the trade of merchandise between merchant and merchant, etc. Luling does vigorously contend that under the contract the relationship of joint adventure or mining partnership was created, and in such a case Section 3 of Article 5527 is applicable.

■ The statute sought to be invoked is by its own terms limited to the class or classes mentioned therein, that is, one partner against his co-partner, and then only for settlement of the partnership accounts, mutual and current accounts concerning the trade of merchandise between merchant and merchant, etc. It was not intended to apply to a case like the present where joint owners of an oil and gas lease operate the same under a contract whereby accounts of the cost of operation are kept upon a monthly basis and the revenue received from the operation is to be paid to the joint owners each month. The parties, as shown by the contract, never intended that a cause of action for what-

ever was due Luling each month would not accrue until cessation of dealings. The contract made between the corporations specifically provides otherwise. Moreover, in this action Luling claims amounts alleged to be due each month from 1929 through 1940. It claims interest on said amounts. It seems inconsistent at least to say that such sums were then due and payable, yet for the purpose of limitation a cause of action for said sums should be considered as having accrued on a cessation of the dealings in which the parties are interested together. Thus, there being no cessation of the operation of the jointly owned leases, the cause of action has not yet accrued.

Courts should apply this exception to a limitation statute when required to do so by legislative mandate, but will only apply it to the class or classes of persons clearly coming within its terms, and only in causes of actions named in the statute. The parties to this action not being within the class of persons named in Section 3 of Article 5527, certainly the statute has no application to this suit.

Luling relies upon the authority of Cockburn v. Irvin, 88 S. W. (2d) 747, in which case this court refused a writ of error with the notation "dismissed for want of jurisdiction." The case cannot be considered as authority for the propositions now pressed upon the court. In that case a partnership was alleged and proven. Cockburn urged the two year statute of limitation. The court held that when a joint adventure or mining partnership was proven and there being no termination of the venture by Cockburn, the joint adventure or mining partnership continued until the suit was filed. In other words, Irvin's cause of action did not accrue until Cockburn had repudiated his agreement to pay Irvin his one-half of the profits. In the present case, as we have seen, Humble obligated itself to account for and pay whatever was due Luling "within one month after the close of each calendar month." Under such an agreement the right to sue came into existence immediately upon Humble's breach of its contract.

■ The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued. Port Arthur Rice Milling Co. v. Beaumont Rice Mills, et al, 105 Texas 514, 143 S. W. 926. Under the contract in suit Luling had the right to examine at any reasonable time all records of the joint account which was to be accurately kept by Humble, including the right to inspect the wells and the production records and reports. It cannot be doubted that upon Humble's failure to allow an inspection of

its records or of the wells at any reasonable time Luling had the right to compel Humble to do so. Moreover, upon Humble's failure to pay whatever sum was due under the contract within the time specified, Luling had the right to compel Humble to pay through a suit in court. These elementary principles make it clear, we think, that while Luling has designated its suit as one for a general accounting, it is not such a suit as would come within the purview of Section 3 of Article 5527, but rather comes under one founded upon a contract in writing.· In this situation the statute of limitation begins to run at the time when a suit could be commenced upon the claim asserted. Port Arthur Rice Milling Company case, supra.

■ Humble Oil & Refining Company and Luling Oil & Gas Company are corporations, and under their charters they are not permitted to form a partnership. It is against the public policy of this state for a corporation to enter into such a relationship. Tram Company v. Bancroft, 16 Texas Civ. App. 170, 40 S. W. 837; White v. Pecos Land & Water Co., 18 Texas Civ. App. 634, 45 S. W. 207. There are instances where corporations undertake to enter into partnership relations and where the transactions are executed or at least partially performed; they will not be permitted to take advantage of their illegal act in order to defeat justice. Miller·Indemnity Underwriters v. Patten, 238 S. W. 240, 245; Indiahoma Refining Co. et al. v. Wood, 255 S. W. 212; Humble Oil & Refining Co. v. Strauss, 243 S. W. 528; Whatley v. Cato Oil Co., Inc. et al 115 S. W. (2d) 1205; McDaniel v. State Fair, 286 S. W. 513; Burton-Lingo Co. v. Federal Glass & Paint Co., 54 S. W. (2d) 170. The relationship of partners, joint adventure or mining partners being contractual in its nature, whether such a relationship exists generally depends upon the intention of the parties. Where the controversy is between the parties and the parties are corporations, a court would not declare that a partnership existed unless that intention clearly appeared, even though the purposes for which the contract was made were fully within the purposes for which the corporations are chartered. We are of the opinion that the contract in suit negatives the existence of an intention to create a partnership relation between Humble and Luling. The contract did not authorize either party to create any liability to third parties which would have been binding on the other. A performance under the contract would not necessarily result in the creation of such a liability. The leased premises were to be operated by Humble exclusively. Luling was not obligated for any of the expense. It had no right to participate until the necessary expense was paid and then was to receive its undivided one-half remaining. Joint owners of an oil and gas lease may, with-

out forming a partnership, contract for the operation of the leases by one of them and for the operator in the event of success pay to the other joint owner one-half of the proceeds of the sale of the oil and gas less the expense of finding it, without creating a joint adventure or a mining partnership. Transcontinental Oil Co. v. Mid-Kansas Oil Co., 29 Fed. (2d) 323.

■ Luling insists, as above stated, that Humble, in the operation of the oil and gas leases, assumed the relationship of trustee for Luling, and under well settled principles, there being no repudiation of the trust, and the trust not having been terminated, limitation does not commence to run against the petitioner's suit for net profits not heretofore accounted for and paid.

The contract, as we have stated, fixed the rights and obligations of the parties. The Humble was obligated to keep an accurate account of the joint investment, both debits and credits, and of all income from the sale of oil and gas. It was obligated to give Luling a detailed report of the account within one month after the close of each calendar month. According to the evidence the Humble made these reports to Luling each month. A dispute arose over the accuracy of the statements as early as 1933. Under the contract Luling had the right to inspect the books concerning these accounts at any reasonable time. While Humble was required to keep an accurate record of the joint account and furnish Luling with a statement thereof each month, the contract further provided that Luling should make its exceptions thereto within a specified time. It was contemplated by the parties that any differences arising between them should be adjusted promptly or at least within a reasonable time. No good reason is suggested why the parties should not be permitted to so bind themselves. The relationship between Humble and Luling under the contract in suit is not one of trustee and cestui que trust as that relationship is generally understood. The corporations bound themselves as to the operation of their jointly owned oil and gas leases. A breach of the agreement by either corporation is a simple breach of a written contract and the law goverening the rights incident thereto is controlled by the law of contracts. Many of the claims asserted in this action grow out of an interpretation of the contract between the parties to it. Luling contends for one interpretation and Humble opposes. Under the evidence the opposing views arose between them as early as 1933, and same were denied by Humble in the early part of 1934. No reason is perceived why under the contract Luling could not have been advised fully and urged its contention in a suit filed at that time. Failing to file suit within four years, it was incumbent upon Luling either to allege a

fraudulent concealment or facts which in law would take its cause of action out of the bar of the statute. We have been cited to no case that presents facts exactly like the facts appearing here, but in our opinion the case are legion which are analogous to and control the law with reference to the facts in this case. Powers v. Schubert, 220 S. W. 120; Mounger v. Dougherty, 138 S. W. 1070; Stephens v. Leatherwood, 295 S. W. 236; Hardin v. Hardin, 1 S. W. (2d) 708; Lewis v. Saylors, 37 S. W. (2d) 760; Owen v. King, 130 Texas 614, 111 S. W. (2d) 695, 114 A. L. R. 859; Tex. Jur., Vol. 28, p. 295, Sec. 201, p. 297, Sec. 202, p. 299, Sec. 204; Sidney v. Ware, 65 Texas 252; Texarkana Motor Co. v. Brashears, 37 S. W. (2d) 773; Jolly v. Fidelity Union Trust Co., 118 Texas 58, 10 S. W. (2d) 539.

■ Luling complains of the action of the Court of Civil Appeals in overruling and not sustaining its first point duly assigned on its cross appeal. The claims asserted by Luling arise out of a two per cent and a one per cent deduction made in measuring the oil produced from the jointly owned properties. Under our view of the case most of the sums claimed are barred by the four year statute of limitation. However, claims for 1936 and 1937 which are not barred by the four year statute require us to determine the merits of Luling's contention. It seems that the trial court allowed Luling a recovery for such deductions made during the year 1929 or from the beginning of operations to January 15, 1930, and refused to allow deductions made subsequent to January 15, 1930, evidently upon the theory that prior to January 15, 1930, the posted price bulletins of Humble and Shell Oil Company for crude oil in the salt flat field did not contain a specific provision that the posted price was based upon the rules and regulations of the Railroad Commission which allowed the pipe line companies running the oil a two per cent deduction in the compliation of the tank tables. The evidence shows that Humble and the Shell Oil Company posted their prices for crude oil in the salt flat field of Texas on the basis of the tariff regulations in force and the rules and regulations of the Railroad Commission. It is true that on cross examination the witnesses who were called by the oil companies testified that when the rules and regulations of the Railroad Commission discontinued the allowance of such deductions the posted prices were not lowered by the companies. The Luling argues from this that the discontinuance of allowing such deductions by the Railroad Commission did not thereby affect the posted price which was paid by the oil companies. The Humble argues that the posted prices were not changed because of an increase of the price being paid for oil at that time.

The parties stipulated that the price paid for and credited to the joint account for oil purchased by Humble Oil & Refining Company for the entire period of its operation, was the average price as provided in the contract of posted prices of the parties named in the contract for purchases of crude oil in the salt flat field. It is to be observed that the parties did not specifically provide in the contract as to the manner of measuring the oil. Evidently it was contemplated by the parties that the oil produced would be transported by a pipe line. This is shown by the contract:

"The average prevailing current posted field price per barrel on the date of respective *runs to pipe lines* of Humble Oil & Refining Company (and other named companies) or such companies as may be purchasing oil in the field where said premises are located and posting prices therefor."

The Shell and Humble were the only companies posting a price for crude oil in the salt flat field. The price bulletins after January 15, 1930, issued by the companies, specifically provide that the prices were based upon the rules and regulations of the Railroad Commission. At the time of making the contract between Humble and Luling, the Railroad Commission, pursuant to authority of law, had promulgated Rule 9, which in part reads:

"Quantities shall be computed from correctly compiled tank tables showing 2% less than the full capacity of the tank in all the fields of Texas except in the coastal fields, in which the tank tables shall be computed showing 1% maximum full capacity of tanks."

It appears that most of the oil taken by the Humble Oil & Refining Company was transported by the Humble Pipe Line Company, a common carrier, whose stock is owned by the Humble Oil & Refining Company. There is in evidence a tank table which seems to have been used by all pipe line companies, evidently prepared in compliance with Rule 9 of the Railroad Commission. It seems to be a compilation of figures used to translate the depth of a tank in feet, inches and quarter inches into barrels so as to disclose the capacity or the amount of oil in the tank. Under tariff regulations of the Railroad Commission a pipe line company in Texas is required to account to the shipper for oil only as to the amount measured in accordance with the tank gauge. Evidently the rule promulgated by the Railroad Commission was an outgrowth of the custom in the oil industry. Luling makes the argument that to allow the Humble Oil & Refining

Ccmpany to account to it for 98% of the oil and later 99% of the oil which it delivered to the Humble Pipe Line Company, whose stock belongs to the Humble Oil & Refining Company, in effect allows the Humble to obtain without paying therefor 2% and 1% of oil which was produced on the jointly owned property, and considering that Luling has been charged with its just proportional part of the expense required to clean the basic sediment from the crude oil Humble should pay it for the 2% and 1% of the oil. Luling also contends that the rules and regulations promulgated by the Railroad Commission are applicable to pipe line companies, and since Humble Oil & Refining Company is not a pipe line company, the rules have no application to its claim for the 2% and 1% as aforesaid. One fault with Luling's argument seems to be that if Humble Pipe Line Company paid for 100% of the oil delivered to it by Humble from the jointly owned properties it would in effect be rebating to the Humble Company, for it is not required or permitted to treat other shippers other than in accordance with the rules and regulations of the Railroad Commission. We are of the opinion that in the absence of a specific manner of measuring the oil having been made by the parties in the contract, and the Railroad Commission having promulgated rules and regulations in its legislative capacity as to the manner of the measurement of crude oil and the long custom in the oil industry being practically the same as the rules promulgated by the Railroad Commission, the parties' contract must be construed in connection with the rules and the customs of the industry to which the contract relates. Trinity Portland Cement Co. v. Lion Bonding Co., 229 S. W. 483; Texas Pacific Coal & Oil Co. v. Stuard, 7 S. W. (2d) 878, error refused. Luling knew as early as 1930 that Humble was receiving compensation from the pipe line company for only 98% of the oil which was run into the pipe line from the tanks and that the joint account was being credited with that amount. Luling was producing oil in East Texas during the time and was receiving payment for only 98% of the oil run from the tanks to the pipe lines. The Humble Oil & Refining Company bought oil from the Luling and payment was made for 98% thereof. We think the rule which should govern in this case is well stated in the cement case, supra:

" 'When an agreement is silent or obscure as to a particular subject, the law and usage becomes a portion of it and constitute a supplement to it and interpret it.' Cyc. Vol. 5, pp. 754, 755."

In Perry v. Langbehn, 113 Texas 72, 252 S. W. 472, this court says:

" Not only are we to construe this contract as a whole but since it is one peculiar to the cotton export trade, and somewhat indefinite or inconsistent in its terms, we may interpret it in the light of the custom of the business, and the construction placed upon it by the parties themselves."

It is our opinion, for the reasons stated, that Luling is not entitled to recover from Humble Oil & Refining Company any of its claim designated "tank strappage deductions."

■ Luling's second point assigned in the Court of Civil Appeals on its cross appeal, which was overruled by the Court, involves an interpretation of two provisions of the contract, which read as follows:

"No home office or overhead charge shall be made to the joint account in connection with the operation of said premises; but to cover bookeeping, accounting and office expenses generally a charge on each well, while actually drilling, of $50.00 per month and a charge of $25.00 per month on each producing well shall be made to the joint account, and to cover supervision and all other general and division overhead expenses a charge of $25.00 per well on each producing well and $50.00 per month on each drilling well shall also be made to the joint account."

"All expenses of drilling, developing, operating and equipping said property after the completion of the first well, as well as expenses of drilling, handling and marketing the oil and gas produced therefrom shall be charged to the joint account."

It is the contention of Luling that Humble charged to the joint account sums aggregating $345,576.86 under the first quoted clause of the contract and erroneously charged the additional sum of $196,135.88 which Humble designated as a "district expense."

Humble contends that the first clause quoted has no reference to "district expenses," but under the general provisions of the contract it had the right to charge the sums designated as "district expenses" under the second clause of the contract quoted above.

In other words, Humble says under the first clause of the contract it had the right to charge a per well basis to cover bookkeeping, accounting and office expenses generally, and a per well charge to cover "supervision and all other general and division overhead expenses." The sums aggregating the larger amount were charged under the first clause quoted and the sums

aggregating the smaller amount consists of a proportional amount of the expenses incurred in the district of which the jointly owned leases were a part, the district expenses being necessary in the economical operation of the jointly owned property.

Two special issues were submitted to the jury by the trial court, evidently for the purpose of embracing the opposing views of the parties. In connection with the two special issues the trial court gave an elaborate instruction to the jury. No complaint was made in the trial court with regard to the method or manner of submission or to the explanatory charge given in connection therewith. Luling filed a motion after the verdict of the jury was received requesting the trial court to disregard the jury's answer to special issues covering this matter. It alleged that the charges made to the joint account were not segregated and itemized and requested the court to appoint an auditor to audit the account and file a report thereon. This motion was overruled by the trial court. The trial court's action was affirmed by the Court of Civil Appeals. Obviously the request of Luling to appoint an auditor after the verdict of the jury, under the facts and circumstances of this case, came too late.

The jury found in effect that the sums designated as "district expenses" were "expenses of drilling, developing, operating and equipping the jointly owned property" or "expenses of treating, handling and marketing the oil" produced on the property or "for both" and such expenses were not charges to cover "bookkeeping, accounting and office expenses generally or supervision and all other division and overhead expenses."

Specifically, Luling asserts that the fixed per well charges provided for in the contract to cover bookkeeping, etc. and "all other general and division overhead expenses" by necessary implication exclude the charges denominated "district expenses." According to the evidence the jointly owned property consisted of 64 wells. It seems that this property was operated by Humble within a district in which many other wells were being operated other than the property jointly owned by the parties. It is in evidence that Humble allocated to the jointly owned property its proportionate part of the district expenses as the number of wells situated on the jointly owned property bore to the number of wells of the entire district. The control of operations being in Humble under the contract, it was obligated to operate the property in good faith. If in the exercise of that right it was deemed necessary to include the property within a district which embraced other oil producing property, Humble had the right to

490

do so, and under the second clause of the contract it had the right to charge all necessary expenses of drilling, etc., as well as expenses of treating, etc., the oil and gas produced on the property to the joint account. Luling has not directed us to any evidence tending to show that any part of the $196,135.85 was not a necessary expense in operating the jointly owned property. Neither have we been directed to any evidence tending to show that any part of said sum was not properly allocated to the jointly owned property.

Regardless of the proper construction to be placed on the quoted clauses of the contract, Luling has not demonstrated any error of the trial court in refusing to appoint an auditor under the facts contained in this record.

It follows that the judgment of the Court of Civil Appeals should be affirmed. It is so ordered.

Opinion delivered December 29, 1945.

Rehearing overruled January 30, 1946.