ACCEPTED
07-15-00113-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
7/1/2015 4:28:47 PM
Vivian Long, Clerk

No. 07-15-00113-CV

IN THE SEVENTH COURT OF APPEALS,
AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
7/1/2015 4:28:47 PM
VIVIAN LONG
CLERK

MOHAMMED FAWWAZ SHOUKFEH, M.D., PA; D/B/A TEXAS CARDIAC CENTER,

APPELLANT,

V.

TEXAS WORKFORCE COMMISSION AND JAMES G. GRATTAN,

APPELLEES

APPEALED FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY, TEXAS
DISTRICT COURT CAUSE NO. 2014-510,479
HON. WILLIAM SOWDER PRESIDING

BRIEF OF APPELLEE
TEXAS WORKFORCE COMMISSION

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for
Defense Litigation

ROBERT O'KEEFE
Chief, Financial Litigation, Tax, and
Charitable Trusts Division

PETER E. LAURIE
Assistant Attorney General
Financial Litigation, Tax, and
Charitable Trusts Division
State Bar No. 24070973
PO Box 12548
Austin, Texas 78711
TEL: (512) 475-2940
FAX: (512) 478-4013
peter.laurie@texasattorneygeneral.gov

ATTORNEY FOR APPELLEE
TEXAS WORKFORCE
COMMISSION

**ORAL ARGUMENT REQUESTED**

# IDENTITIES OF PARTIES AND COUNSEL

In order that the members of this Court may determine disqualification and recusal under the Texas Rules of Appellate Procedure, this Appellant certifies that the following is a complete list of the parties, attorneys, and other persons in this lawsuit.

**Appellant:**             **Mohammed Fawwaz Shoukfeh, M.D. P.A. d/b/a Texas Cardiac Center**

**Attorney for Appellant:**        **H. Grady Terrill**
**Elizabeth G. Hill**
**Craig, Terrill, Hale & Grantham, LLP**
**9816 Slide Road, Ste. 201**
**Lubbock, Texas 79424**

**Appellee:**              **James G. Grattan**

**Attorney for Appellee:**          **John H. Simpson**
**Splaw Simpson Pitts**
**P.O. Box 1376**
**Lubbock, Texas 79408-1376**

**Appellee:**              **Texas Workforce Commission**

**Attorney for Appellee:**          **Peter E. Laurie**
**Assistant Texas Attorney General**
**Financial Litigation, Tax, and Charitable Trusts Division**
**P. O. Box 12548**
**Austin, TX 78711-2548**

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ....................................................... i

INDEX OF AUTHORITIES.................................................................iii-iv

STATEMENT OF THE CASE.................................................................1

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

ISSUES PRESENTED.................................................................1

STATEMENT OF FACTS .................................................................2

SUMMARY OF ARGUMENT .................................................................5

ARGUMENT .................................................................5

    I.    Judicial review of a TWC Payday decision is by trial *de novo* based on the substantial evidence rule. ...................................................5

    II.    Grattan is entitled to $125,988.91 in unpaid wages from Texas Cardiac. .................................................................7

    III.    Texas Cardiac has not met its burden. .................................................10

    IV.    Texas Cardiac's contract with Dr. Ahmad Qaddour is not relevant. .................................................................11

PRAYER .................................................................12

CERTIFICATE OF COMPLIANCE.................................................................13

CERTIFICATE OF SERVICE .................................................................14

## INDEX OF AUTHORITIES

**Cases**

*Bollner v. Plastics Solutions of Texas, Inc.*, 270 S.W.3d 157 (Tex. App. El Paso 2008, no pet.)..................................................................................................7

*City of San Antonio v. Flores*, 619 S.W.2d 601 (Tex. Civ. App.–Houston [14th Dist.] 1981, writ ref'd n.r.e.) ...........................................................................5, 6

*Collingsworth Gen. Hosp. v. Hunnicut*, 988 S.W.2d 706, 708 (Tex. 1998); *Mercer v. Ross*, 701 S.W.2d 830, 801 (Tex. 1986) ............................................................5

*Cusson v. Firemen's & Policemen's Civil Serv. Comm'n*, 524 S.W.2d 88 (Tex. Civ. App.–San Antonio 1975, no writ) ..............................................................5, 6

*DeLeon v. Tex. Employment Comm'n*, 529 S.W.2d 268, 270 (Tex. Civ. App.— Corpus Christi 1975, writ ref'd n.r.e.)...................................................................6

*Direct Commc'ns v. Tex. Employment Comm'n*, 906 S.W.2d 537, 542 (Tex. App.—Dallas 1995, no writ).......................................................................................5

*Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716 (1945) ..............................................................................................................8

*Mescalero Energy, Inc. v. Underwriters Indem. General Agency, Inc.*, 56 S.W.3d 313 (Tex. App. Houston [1st Dist.] 2001 pet. denied)...............................................8

*Mutual Bldg. and Loan Ass'n v. Lewis*, 572 S.W.2d 771, 778 (Tex. Civ. App.– Austin 1978, no writ) .......................................................................................6

*Olivarez v. Aluminum Corp. of Am.*, 693 S.W.2d 931, 932 (Tex. 1985)...................6

*Prof'l Mobile Home Transport v. R.R. Comm'n of Tex.*, 733 S.W.2d 892. 899 (Tex. App. Austin 1987, writ refused n.r.e.) .................................................................6

*Tex. Aeronautics Comm'n v. Braniff Airways, Inc.*, 454 S.W.2d 199, 202, 205 (Tex. 1970)...................................................................................................6

*Tex. Employment Comm'n v. Holberg*, 440 S.W.2d 38 (Tex. 1969).........................6

**Statutes**

Tex. Lab. Code § 61.018 (West 2015)........................................................................8

Tex. Lab. Code Ann. § 61.062 (West 2015)...........................................................5

**Other Authorities**

*Black's Law Dictionary* 575 (3rd pocket ed. 2006).............................................8, 11

*Webster's Ninth New Collegiate Dictionary* 944 (1989)....................................8, 11

**Rules**

Texas Rule of Appellate Procedure 38.2(a)(1)(B)........................................................1

## STATEMENT OF THE CASE

*Nature of the Case:* This appeal concerns a Texas Workforce Commission ("TWC") wage claim decision. The TWC determined that Appellee Mohammed Fawwaz Shoukfeh, MD PA d/b/a Texas Cardiac Center ("Texas Cardiac") owed James G. Grattan ("Grattan") $125,988.91 in unpaid wages. The TWC filed a motion for summary judgment asserting that substantial evidence supported the decision Texas Cardiac challenged.

*Trial Court Disposition:* The trial court granted the TWC's motion for summary judgment and dismissed the case, in its entirety.

## STATEMENT REGARDING ORAL ARGUMENT

The TWC believes oral argument should be denied as it will not aid this Court in addressing the legal issues presented in this appeal. The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. But if the Court deems oral argument necessary, the TWC reserves its right to participate.

## ISSUES PRESENTED

The TWC is dissatisfied with Texas Cardiac's Statement of Issues and restates the issue pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(B) as follows:

> There is only one issue in this case: Does substantial evidence support the decision Texas Cardiac challenged?

1

## STATEMENT OF FACTS

Grattan worked as a cardiologist for Texas Cardiac from June 19, 2006 through April 30, 2013.[1] When Grattan began his employment with Texas Cardiac, the parties laid out the terms of Grattan's employment in a formal agreement (the "Agreement"), including how his pay would be calculated.[2] The Agreement provided that Grattan would receive six percent of the designated health service revenue, defined by the Agreement, during his first year of employment.[3] Grattan was responsible for specific expenses, including his share of overhead expenses.[4] Additionally, Grattan would receive his net receipts less his *pro rata* share of the overhead expenses.[5]

While Grattan was employed by Texas Cardiac, the number of physicians working for Texas Cardiac fluctuated.[6] As a result, Grattan's pro rata share of the overhead expenses changed based upon the number of physicians employed by

---

[1]  Clerk's Record ("CR"): 260.

[2]  CR: 262-264.

[3]  CR: 262.

[4]  CR: 262-263.

[5]  CR: 369-372; 399-400.

[6]  *Id.*

Texas Cardiac.[7]  In September of 2012, Texas Cardiac employed three physicians, including Grattan, and the overhead expenses were split evenly among the three physicians.[8]

In November 2012, a new physician came to work for Texas Cardiac, bringing the number of physicians to four.[9]  But Texas Cardiac deducted one-third of the overhead expenses from Grattan's net receipts from November 2012 through April 2013, despite the fact there were now four physicians.[10]

The Agreement between Texas Cardiac and Grattan regarding his employment and compensation was not modified when the new physician joined the practice, and Grattan did not authorize deductions from his wages beyond what was agreed upon in the formal written agreement dated June 19, 2006.[11]

In May of 2013 Defendant Grattan filed a wage claim with the TWC seeking wages earned but not received from September 2012 through April 2013 from Texas Cardiac.[12]  On June 20, 2013, the TWC received Texas Cardiac's response to

---

[7]  *Id.*

[8]  *Id.*

[9]  *Id.*

[10]  CR: 369-372; 400.

[11]  *Id.*

[12]  CR: 233-234.

Grattan's wage claim.[13]  The TWC mailed a Preliminary Wage Determination Order finding, based upon the information provided by Texas Cardiac and Grattan, that Grattan was entitled to $38,435.89 in unpaid wages.[14]

Both Texas Cardiac and Grattan appealed. After a telephonic hearing, the TWC Wage Claim Appeal Tribunal issued its determination modifying the August 14, 2013 determination based upon the testimony and evidence presented in the hearing to find that Grattan was entitled to $5,817.32 in unpaid wages.[15]  Again, both Texas Cardiac and Grattan appealed. On February 6, 2014, the TWC Commission issued its Findings and Decisions modifying the Wage Claim Appeal Tribunal's decision and finding that Grattan was entitled to $125,988.91 in unpaid wages.[16]

Texas Cardiac filed suit challenging the TWC's decision in the 99th District Court. The parties filed cross-motions for summary judgment. The trial court granted the TWC's and Grattan's motion and entered final judgment against Texas Cardiac.[17]  This appeal followed.

---

[13]  CR: 218-219.

[14]  CR: 169-170.

[15]  CR: 94-103.

[16]  CR: 75-80.

[17]  CR: 426-427.

## SUMMARY OF ARGUMENT

There is but one legal question before this Court: Does substantial evidence supports the TWC's decision? This is a question of law and no material fact issues exist. Because substantial evidence support the TWC's decision, the Court should affirm the trial court's judgment.

## ARGUMENT

I.    **Judicial review of a TWC Payday benefits decision is by trial *de novo* based on the substantial evidence rule.**

Judicial review of a TWC decision regarding a claim for unpaid wages is by trial *de novo* to determine whether substantial evidence exists to support the TWC decision.[18] Under this standard, the TWC's decision is presumed to be valid, and the party challenging the decision has a significant burden to prove otherwise.[19]

Substantial evidence need not be much evidence, and although "substantial" means more than a mere scintilla, or some evidence, it need not be a preponderance of the evidence.[20] "In fact, the evidence may be substantial and yet greatly

---

[18]  Tex. Lab. Code Ann. § 61.062 (West 2015); *see Direct Commc'ns v. Tex. Employment Comm'n*, 906 S.W.2d 537, 542 (Tex. App.—Dallas 1995, no writ); *see also City of San Antonio v. Flores*, 619 S.W.2d 601 (Tex. Civ. App.–Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Cusson v. Firemen's & Policemen's Civil Serv. Comm'n*, 524 S.W.2d 88 (Tex. Civ. App.–San Antonio 1975, no writ).

[19]  *Collingsworth Gen. Hosp. v. Hunnicut*, 988 S.W.2d 706, 708 (Tex. 1998); *Mercer v. Ross*, 701 S.W.2d 830, 801 (Tex. 1986).

[20]  *Mutual Bldg. and Loan Ass'n v. Lewis*, 572 S.W.2d 771, 778 (Tex. Civ. App.–Austin 1978, no

preponderate the other way."[21]

When conducting a substantial evidence review of a state agency's administrative decision, it is error for a court to engage in an independent factual inquiry.[22] A court's role, under this standard, is to hear and consider evidence to determine whether reasonable support exists for the agency's decision.[23]

A court must uphold the TWC's decision if it is reasonable even though the court, if it were acting as the trier of fact, might have reached a different conclusion.[24] If the arguments of both sides are reasonable, even if there is conflicting evidence, then there is substantial evidence to support the TWC's decision and a court must uphold the agency decision.[25] A court may only set aside the agency's decision if it finds the decision "to have been made without regard to the law or the facts and therefore was unreasonable, arbitrary, or capricious."[26]

---

writ); *Olivarez v. Aluminum Corp. of Am.*, 693 S.W.2d 931, 932 (Tex. 1985).

[21] *Olivarez,* 693 S.W.2d at 932.

[22] *Prof'l Mobile Home Transport v. R.R. Comm'n of Tex.*, 733 S.W.2d 892. 899 (Tex. App. Austin 1987, writ refused n.r.e.).

[23] *Id.*

[24] *Flores*, 619 S.W.2d at 602.

[25] *Tex. Aeronautics Comm'n v. Braniff Airways, Inc*., 454 S.W.2d 199, 202, 205 (Tex. 1970); *Cusson*, 524 S.W.2d at 90.

[26] *DeLeon v. Tex. Employment Comm'n*, 529 S.W.2d 268, 270 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.); see also *Tex. Employment Comm'n v. Holberg*, 440 S.W.2d 38 (Tex. 1969).

## II.    Grattan is entitled to $125,988.91 in unpaid wages from Texas Cardiac.

Texas Cardiac is liable for unpaid wages owed to Grattan. Texas Labor Code § 61.001(7) defines wages, in part, to mean "compensation owed by an employer for labor or services rendered by an employee, whether computed on a time, task, piece, commission or other basis[.]" The Labor Code states that an employer may not withhold or divert any part of an employee's wages unless the employer (1) is ordered to do so by a court of competent jurisdiction, (2) is authorized to do so by state or federal law; or (3) has written authorization from the employee to deduct part of the wages for a lawful purpose.[27]

While employed by Texas Cardiac, Grattan's wages were calculated based upon the Agreement.[28]   Under the Agreement, Grattan was responsible for:

> . . .a *pro rata* share of the overhead expenses . . . and [Grattan] will receive Physician's Net Receipts collected by Association less [Grattan's] pro rata share of the overhead expenses.

The Agreement does not define "*pro rata*." Thus, the question is: how is the *pro rata* share calculated? In the absence of a contractual definition, a court can resort to a standard dictionary to supply the meaning.[29]  Webster's Dictionary defines '*pro*

---

[27]  Tex. Lab. Code § 61.018 (West 2015).

[28]  CR: 262-263.

[29]  *Bollner v. Plastics Solutions of Texas, Inc.*, 270 S.W.3d 157 (Tex. App. El Paso 2008, no pet.).

7

*rata*' as "proportionately according to an exactly calculable factor", and Black's Legal Dictionary contains a similar definition of "proportionately; according to an exact rate, measure or interest."[30]

In addition, Texas Cardiac's custom and practice can assist the Court in resolving this question. When construing a contract the Court may consider the general customs and practices affecting the subject matter of the agreement, and extrinsic evidence of the commonly understood meaning of a term in a contract may be offered.[31]

In the past, overhead was divided among all physicians working for Texas Cardiac.[32] Consistent with that practice overhead expenses of the practice were split among all physicians working for Texas Cardiac.[33]

Grattan's gross salary, before taxes, for September 2012 was $15,024.36, and $28,022.12 for October.[34] These wages were calculated based upon the formula provided in the 2006 agreement, and correctly reflect the overhead divided among

---

[30] *Webster's Ninth New Collegiate Dictionary* 944 (1989); *Black's Law Dictionary* 575 (3rd pocket ed. 2006).

[31] *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716 (1945); *Mescalero Energy, Inc. v. Underwriters Indem. General Agency, Inc.*, 56 S.W.3d 313 (Tex. App. Houston [1st Dist.] 2001 pet. denied).

[32] *Id.*

[33] *Id.*

[34] CR: 369-372; 393.

the then three employed physicians.

Under the customary practice, the *pro rata* method of calculating overhead, from November 2013 forward, Grattan earned the following wages:

November: $35,423.50
December: $32,128.27
January: $-4,350.45
February: $21,934.28
March: $5,443.97
April: $24,377.54[35]

In all, between September 2012 and April 2013, Grattan earned $158,003.59 in gross salary.[36] Texas Cardiac issued Grattan a check for $32,014.68 in May of 2013.[37] Taking this partial payment into account, Grattan is entitled to $158,003.59 less the $32,014.68, which equals $125,988.91 in gross wages before the customary *pro rata* deduction and other standard deductions for taxes.

And $125,988.91 in gross wages is the amount the TWC awarded Grattan. This award is based on credible evidence presented to the TWC during the administrative process and to the trial court on summary judgment. The TWC's decision is supported by substantial evidence and the trial court properly affirmed it on summary judgment.

---

[35] *Id.*

[36] *Id.*

[37] CR: 371.

## III.   Texas Cardiac has not met its burden.

Texas Cardiac alleges that the TWC ignored the plain language of the June 19, 2006 Agreement when it found that the 'pro rata share of overhead expenses' meant that the overhead expenses should be divided by the total number of physicians employed by Texas Cardiac.[38] Texas Cardiac's argument is that the TWC should not have accepted Grattan's interpretation of the language but should have accepted Texas Cardiac's method. Instead of calculating *pro rata* shares based on the total number of physicians working for Texas Cardiac, Texas Cardiac urges the Court to make this calculation based on just three physicians.

Texas Cardiac's argues that the overhead expenses should be divided among three physicians, not four, because the new physician did not yet have privileges and was differently situated from other physician's in Texas Cardiac's practice.[39] But the Agreement between Grattan and Texas Cardiac does not include any such exception to the *pro rata* calculation. And calculating Grattan's wages according to this method would be inconsistent with the plain meaning of *pro rata* and inconsistent with Texas Cardiac's past practices.

---

[38]  Appellant's Brief: 8-20.

[39]  *Webster's Ninth New Collegiate Dictionary* 944 (1989); *Black's Law Dictionary* 575 (3rd pocket ed. 2006).

The TWC's decision is based on the plain language of the Agreement between Texas Cardiac and Grattan and based on Texas Cardiac's past payment practices. Texas Cardiac's alternate calculation method does not "totally destroy" the basis upon which the TWC rendered its decision.

Because Texas Cardiac did not meet its burden to "totally destroy" the TWC's case, the trial court properly granted summary judgment in the TWC's and Grattan's favor.

## IV. Texas Cardiac's contract with Dr. Ahmad Qaddour is not relevant.

Texas Cardiac spends a considerable portion of his brief arguing that the TWC's decision is illegal under the Labor Code and imposes extra-contractual responsibilities on Texas Cardiac.[40] Texas Cardiac argues that the decision requires it to "deduct overhead expenses to Qaddour."[41] Because of this "requirement" Texas Cardiac claims that it must deduct wages from Qaddour's salary without a contractual agreement to do so in violation of the Labor Code.

Texas Cardiac's argument is based on this premise: The TWC's decision requires Texas Cardiac to alter the terms of his contract with Qaddour. This premise is flawed, and the TWC responds to the argument as follows:

---

[40] Appellant's Brief: 20-26.

[41] Appellant's Brief: 20

First, the only contract relevant to the Court's analysis is the one between Grattan and Texas Cardiac;

Second, nothing in the TWC's order requires Texas Cardiac to do anything with respect to Qaddour; and

Third, to the extent Texas Cardiac's agreements with Grattan and Qaddour caused it to incur unanticipated expenses, Texas Cardiac cannot shift the cost of its oversight to Grattan.

For these reasons, the Court should place no weight on Texas Cardiac's argument that the TWC's decision imposes extra-contractual obligations on Texas Cardiac and/or is illegal.

## PRAYER

FOR THESE REASONS, the TWC prays that this Court affirm the trial court's judgment in its entirety.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Defense Litigation

12

ROBERT O'KEEFE
Division Chief
Financial Litigation, Tax, and Charitable Trusts
Division

*/s/ Peter Laurie*
**PETER E. LAURIE**
Assistant Attorney General
Bar No. 24070973
Financial and Tax Litigation
PO Box 12548
Austin, Texas 78711-2548
(512) 475-2940
(512) 478-4013 - FAX
**Attorneys for Defendant**
**Texas Workforce Commission**

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 1712 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1), as counted by the computer program used to prepare this document.

*/s/ Peter E. Laurie*
**PETER E. LAURIE**
**Assistant Texas Attorney General**

## CERTIFICATE OF SERVICE

Pursuant to the Texas Rules of Appellate Procedure, the undersigned hereby certifies that on the 1st day of July, 2015, a true and correct copy of the *Brief of Appellee Texas Workforce Commission* was sent via e-serve.

*/s/ Peter E. Laurie*
**PETER E. LAURIE**
**Assistant Texas Attorney General**