**Opinion issued December 22, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00388-CV

————————————

**GARNER ENVIRONMENTAL SERVICES, INC., Appellant**

**V.**

**FIRST IN RESCUE, SAFETY AND TRAINING, LLC, ADOLPH ROY CREAGER, LOGAN REININGER, SHELLEY MATTHEWS, TOM HENDERSON, AND BO ATKINSON, Appellees**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-40405**

---

## MEMORANDUM OPINION

Garner Environmental Services, Inc. filed suit against First In Rescue, Safety

and Training, LLC ("FIRST") and some FIRST employees, Adolph Roy Creager,

Logan Reininger, Shelley Matthews, Tom Henderson, and Bo Atkinson.[1]  In its live pleading, Garner alleged misappropriation of trade secrets, fraud, harmful access by computer, and civil conspiracy.  FIRST filed a motion for summary judgment, arguing all of the claims were barred by the statute of limitations.  The trial court granted the motion.  In one issue on appeal, Garner argues the claims were not time barred due to the discovery rule.

We reverse and remand.

## Background

Garner is a company that provides "emergency spill response for oil and other hazardous materials, disaster response, and standby rescue training."  It has been in business since 1981.  In 2008, Creager—then a vice president at Garner—quit and formed FIRST to compete with Garner.  Reininger, Matthews, Henderson, and Atkinson also left Garner to work with FIRST.

On January 13, 2009, Bobbie Risner—Garner's general counsel—sent a letter to FIRST.  Risner "allege[d] [FIRST was] unlawfully using Garner's customer lists, customer contacts and class schedules made available to you or obtained by you during [the Garner employees'] employment with Garner."  Risner specifically alleged that First had "solicit[ed] Garner's customers both in person and over the

---

[1]  Nothing on appeal requires differentiating between FIRST and its employees. Accordingly, we refer to all of them collectively as FIRST for purposes of this appeal.

phone; use[d] Garner's customer lists and contact information to divert business opportunities away from Garner; [and] use[d] Garner's pricing information to interfere with Garner's agreements with existing customers." Risner requested certain information from FIRST and threatened suit unless FIRST agreed to settle the matter.

Risner later testified in a deposition that, prior to sending the January 13 letter, a client scheduled to attend one of Garner's training classes switched at the last minute to a class held by FIRST, a situation which she testified "just stunk to the high heavens." Risner testified that this caused her to suspect that FIRST had possession of some of Garner's confidential information. That was the sole basis for her January 13 letter. She testified that, although none of the former Garner employees that went to work for FIRST had entered into non-compete agreements with Garner, she believed the former employees were legally precluded from contacting Garner's clients. After sending the letter, Risner conducted further legal research and determined that she had been mistaken.

FIRST's outside counsel, Jason Medley, responded to Risner on January 16, 2009. Medley pointed out that none of the former Garner employees had non-compete agreements and, accordingly, were not precluded from contacting Garner clients. He also asserted that Garner's customer lists were not confidential information if they were readily discernable. "In the case of FIRST, its potential

client base is easily ascertainable, readily available to the general public and replicated from memory . . . ." Medley asserted that, if Garner brought suit, FIRST would countersue for filing a frivolous suit.

The parties then exchanged a number of other letters. Some of the letters concerned whether Medley would act as agent of service for FIRST and certain employees in the event of filing suit. In another letter, Risner instructed FIRST to preserve all documents potentially relevant to suit. By the end of February 2009, however, correspondence about possible litigation had ceased, and Garner did not file suit.

In late 2013, FIRST filed suit against a former employee that had gone to work for another competitor. FIRST alleged in that suit that the former employee had stolen FIRST's confidential information. The former employee filed a number of documents in that suit. Those documents came to the attention of Garner. After reviewing the documents some time in 2014, Garner came to believe that the documents in question had originated with them and established that FIRST had taken and used Garner's confidential information.

Garner filed suit against FIRST in July 2015, alleging misappropriation of trade secrets, fraud, harmful access by computer, and civil conspiracy. After taking Risner's deposition, FIRST filed a motion for summary judgment, arguing that all of Garner's claims were barred by the statute of limitations. Garner responded to

the motion, arguing that the limitations periods for their claims had not begun to run until they discovered the injury, pursuant to the discovery rule. The trial court ruled in FIRST's favor, dismissing with prejudice all of Garner's claims.

## Standard of Review

The summary-judgment movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a "traditional" summary-judgment motion asserted under Rule 166a(c), a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When it moves for summary judgment on a claim for which it bears the burden of proof, a party must show that it is entitled to prevail on each element of its cause of action. *See Parker v. Dodge*, 98 S.W.3d 297, 299 (Tex. App.—Houston [1st Dist.]

2003, no pet.). The party "meets this burden if it produces evidence that would be sufficient to support an instructed verdict at trial." *Id.*

To determine whether there is a fact issue in a motion for summary judgment, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller,* 168 S.W.3d at 827). We indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

**Analysis**

Application of the statute of limitations on a claim is an affirmative defense for which the party asserting its application bears the burden of proof. *KPMG Peat Marwick v. Harrison Cnty. Housing Finance Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). To establish its application, "the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised." *Id.* The defendant negates the application of the discovery rule "by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." *Id.*

6

There is no dispute between the parties that the discovery rule applies to Garner's claims or that it was raised by Garner in its live petition. Accordingly, the only issue before us is when Garner discovered or should have discovered the nature of its injury. *See id.*

"[A] cause of action accrues 'when facts come into existence [that] authorize a claimant to seek a judicial remedy,' 'when a wrongful act causes some legal injury,' or 'whenever one person may sue another.'" *Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015) (quoting *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996); *Luling Oil & Gas Co. v. Humble Oil & Ref. Co.*, 191 S.W.2d 716, 721 (Tex. 1945)). The discovery rule "defers accrual of a claim until the injured party learned of, or in the exercise of reasonable diligence should have learned of, the wrongful act causing the injury." *Cosgrove v. Cade*, 468 S.W.3d 32, 36 (Tex. 2015). The discovery rule applies "in those cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996).

Garner argues that this case is controlled by the recent Supreme Court of Texas case, *Southwestern Energy Production Co. v. Berry-Helfand*, 491 S.W.3d 699 (Tex. 2016). We agree.

In *Southwestern*, Helfand devoted seven years to analyzing data from an eastern Texas oil-and-gas formation. *Id.* at 705. As a result of her work, she identified certain "sweet spots" in the formation where, in conjunction with certain recent developments in drilling methods, profitable amounts of oil and gas could be extracted. *Id.*

In February 2005, Helfand met with Southwestern Energy Production Company ("SEPCO"). *Id.* at 706. In the presentation, Helfand disclosed the results of her work to SEPCO, identifying the sweet spots in the formation along with the necessary drilling methods. *Id.* at 707. SEPCO did not return the relevant documents to Helfand until May 2005, when Helfand requested them. *Id.* at 708. SEPCO did not agree to Helfand's proposal to use her information to develop the formation. *See id.* Regardless, SEPCO began its own operations in the formation in question. *Id.*

In 2006, Helfand sued other parties. *Id.* at 709. In the course of that litigation, she discovered information showing SEPCO had used her trade secrets in developing its interest in the eastern Texas formation. *See id.* Helfand brought suit against SEPCO in February 2009. *Id.*

SEPCO argued that Helfand knew or should have known that it had used her trade secrets in 2005. *Id.* at 722. Its proof that limitations began to run in 2005 stemmed from "(1) emails Helfand wrote or was party to in May 2005 that reveal

her concerns and suspicions about SEPCO's retention of Helfand's proprietary information and (2) her testimony at trial that she knew SEPCO was drilling in sweet-spot areas in the summer of 2005." *Id.* The evidence showed that, in 2005, certain evidence raised Helfand's suspicions about her former partner's interaction with SEPCO, Helfand knew SEPCO was drilling in the sweet spot areas, Helfand said at the time "[i]t was becoming obvious . . . that something was not right," and the documents provided to SEPCO gave it enough information to completely map certain good drilling areas. *Id.* at 722–23. In an email exchange between two people associated with Helfand, one noted that "the ability of [SEPCO] to knock off [Helfand's] methodology smells to the heavens." *Id.* at 723.

The Supreme Court of Texas held that these facts did not establish a date that the wrongful conduct was discovered or discoverable. *Id.* at 724. "The evidence SEPCO relies on amounts to mere surmise, suspicion, and accusation. Without more, subjective beliefs and opinions are not facts that in the exercise of reasonable diligence would lead to the discovery of a wrongful act." *Id.* The court recognized there was enough information for Helfand to be aware of a "potential and opportunity" to misuse her trade secrets. *Id.* But being aware of a potential for abuse was not sufficient. *See id.*

In addition, the court held, "SEPCO has not identified any evidence revealing what Helfand would have discovered had she made further inquiry." *Id.* SEPCO

was not precluded from drilling in the eastern Texas formation. *See id.* It was only precluded from using Helfand's information to do so. *See id.* In sum, the court held that "mere suspicion or incidental knowledge of some leasing or drilling activities in sweet-spot areas covering thousands of acres would not, in and of itself, conclusively establish Helfand knew or should have known something was amiss." *Id.* at 725.

We discern no meaningful differences between *Southwestern* and this case. The evidence shows that Garner had reason to be suspicious of FIRST's activities but did not have any actual information indicating any legal injury to Garner. Likewise, there is no evidence in the record of what actions Garner could have taken to inquire further or what that inquiry would have uncovered.

For Ganer's actual knowledge of FIRST's activities, the only knowledge that Garner had was that FIRST was competing with Garner and succeeded in taking clients away from Garner. But as FIRST pointed out in its January 16 letter, FIRST was entirely within its rights to compete with Garner. *See id.* (holding knowledge of drilling within oil-and-gas formation did not establish knowledge of misuse of confidential information). Garner *alleged* in its January 13 letter that FIRST had taken certain, specific data from Garner, but Risner's deposition revealed that Garner had no facts to support these allegations other than the perceived suspiciousness of

FIRST's competition with Garner clients. *See id.* at 724 (holding "mere surmise, suspicion, and accusation" are insufficient to establish knowledge of injury).

FIRST argues that, because Garner sent a cease-and-desist letter threatening suit and because certain statements in the letter were framed as assertions of fact (e.g., "Garner alleges you are unlawfully using Garner's customer lists, customer contacts and class schedules. . ."), the letter must be construed as proof that Garner had knowledge of FIRST's wrongdoing. At the same time, FIRST argues that its response explicitly denying certain allegations (e.g., asserting FIRST's customer list was "replicated from memory") and implicitly denying others (e.g., threatening to counter-sue for filing a frivolous lawsuit if Garner filed suit), should be construed as nothing more than common lawyerly posturing in the face of litigation. Accordingly, FIRST argues, Garner could not have reasonably relied on its letter as a basis to end further inquiry.

FIRST offers no explanation for why it is entitled to have Garner's statements of accusations construed as proof of knowledge while having its own statements of denial construed as posturing upon which Garner could not reasonably rely.[2] *See Fielding*, 289 S.W.3d at 848 (holding evidence is viewed in the light most favorable to non-movant); *Sw. Elec. Power*, 73 S.W.3d at 215 (holding any doubts must be

---

[2] Parties are permitted to take contradictory positions in the alternative. *See* TEX. R. CIV. P. 48. But that is not what FIRST is doing here. Instead, it argues that both positions apply in conjunction.

resolved in favor of non-movant).  Nevertheless, we find no basis to conclude that allegations in a cease-and-desist letter must be construed as proof of knowledge of the allegations.  *See Sw. Energy Prod.*, 491 S.W.3d at 724 (holding accusations are insufficient to establish knowledge of injury).

For any obligation Garner had to conduct further inquiry, FIRST provides no proof of what Garner could have done or what it would have discovered.  *See id.* (holding defendant had failed to show what evidence would have been revealed upon further inquiry).  FIRST argues that Garner could have conducted some pretrial depositions, but the law does not support this argument.

In order to take a pretrial deposition, the party seeking the deposition must petition a court to authorize it.  TEX. R. CIV. P. 202.1.  In order to receive that authorization, the petitioner must prove to the court that the "requested deposition may prevent a failure or delay of justice in an anticipated suit" or that "the likely benefit of . . . the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure."  TEX. R. CIV. P. 202.4(a).

For the first option, rule 202 "requires the petitioner to show that there is a reason that the deposition must occur before the anticipated lawsuit is filed, and not after." *In re Hanover Ins. Co.*, No. 01-13-01066-CV, 2014 WL 7474203, at *2 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, orig. proceeding) (mem. op.).  Vague notions that the evidence might become unavailable over time is insufficient.  *See*

*id.* As we have held, Garner had no proof of its suspicions. Accordingly, it did not have a basis to establish that FIRST had any information in its possession that could justify a pretrial deposition. *See id.*

For the second option, "it will be difficult[,] if not impossible," for a party suspicious of trade secrets violations "to meet his or her burden to establish the necessity of the information to adjudicate a claim or defense." *In re Hewlett Packard*, 212 S.W.3d 356, 363 (Tex. App.—Austin 2006, orig. proceeding). A party that suspects another party of misuse of confidential information necessarily concedes the confidential nature of the information in the other party's possession. Its only dispute is who has the right to possess the information. To allow a rule 202 deposition in that situation would require the other party to reveal the confidential information in their possession. Requiring such disclosure places a heavy burden on the party to be deposed. *See id.* at 362 (holding complications in responding to questions about trade secrets, along with how such information might have been affected by knowledge gained while with previous employer, creates onerous burden on deponent and current employer).

The record reveals no grounds for Garner to have overcome the burden to obtain a rule 202 deposition or any other method that could have substantiated Garner's suspicions. Accordingly, FIRST failed to establish a date (prior to Garner's stated discovery date in 2014) by which Garner knew or, with reasonable diligence,

13

could have discovered the nature of its injury. *See KPMG*, 988 S.W.2d at 748 (placing burden on party asserting statute of limitations to negate discovery rule); *Sw. Energy Prod.*, 491 S.W.3d at 724 (holding suspicions insufficient to establish date that wrongful conduct was discovered or discoverable).

We sustain Garner's sole issue.

## Conclusion

We reverse the judgment of the trial court and remand for further proceedings.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Lloyd.